772 F.2d 462
 13 Collier Bankr.Cas.2d 814, 13 Bankr.Ct.Dec. 889,
Bankr. L. Rep. P 70,727
 In re N.S. GARROTT & SONS and Eastern Arkansas Planting
Company, a Joint Venture.
N.S. GARROTT & SONS, an Arkansas General Partnership, Appellee,
Eastern Arkansas Planting Company, an Arkansas General
Partnership, Appellee,
v.
UNION PLANTERS NATIONAL BANK OF MEMPHIS and Crittenden
Abstract & Title Co., Inc.
Chicago Title Insurance Company, Intervenor, Appellant.
In re N.S. GARROTT & SONS and Eastern Arkansas Planting
Company, a Joint Venture.
N.S. GARROTT & SONS, an Arkansas General Partnership, Appellee,
Eastern Arkansas Planting Company, an Arkansas General
Partnership, Appellee,
v.
UNION PLANTERS NATIONAL BANK OF MEMPHIS, Appellee,
Crittenden Abstract & Title Co., Inc., Appellant,
Chicago Title Insurance Company, Intervenor.
 Nos. 84-2250, 84-2281.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 9, 1985.
Decided Sept. 9, 1985.
 
 Scott T. Vaughn, Little Rock, Ark., for appellant.
 Susan Gunter, Little Rock, Ark., for appellee.
 Before ROSS and JOHN R. GIBSON, Circuit Judges, and MEREDITH,* District Judge.
 ROSS, Circuit Judge.
 
 
 1
 This case arises out of Chapter 11 proceedings in bankruptcy. The debtors, N.S. Garrott & Sons, an Arkansas General Partnership; Eastern Arkansas Planting Company, an Arkansas General Partnership; and N.S. Garrott & Sons and Eastern Arkansas Planting Company, an Arkansas Joint Venture, filed a complaint for turnover of a fund held by Union Planters National Bank (Union Bank). Crittenden Abstract & Title Co., Inc. (Crittenden or appellant), who opposed the turnover request, was added to the complaint as a party defendant, and Chicago Title Insurance Company (Chicago Title or appellant), who also opposed the turnover of the fund, was permitted to intervene. The bankruptcy court held the fund was property of the estate, ordered the fund turned over to the debtors and the district court affirmed. We affirm in part but remand the case to the district court with directions.
 
 FACTS
 
 2
 In early 1981 the debtor, N.S. Garrott & Sons, wanted to borrow $2,850,000 from the Federal Land Bank of St. Louis (Land Bank) and to secure the loan by a mortgage on two farms, one owned by the debtor and the other owned by Evelyn Montgomery and other individuals (nondebtor owners). Both farms were subject to a first mortgage. The farm owned by the debtor was subject to a first mortgage in favor of Connecticut Mutual Life Insurance Company (Connecticut Mutual) in the principal amount of $1,425,057.98. The other farm was subject to a first mortgage in favor of Connecticut General Life Insurance Company (Connecticut General) in the principal amount of $282,000. Both mortgages were low interest mortgages and contained provisions for prepayment penalties.
 
 
 3
 The existence of the Connecticut Mutual and Connecticut General mortgages presented an obstacle to the debtor's acquisition of the loan from the Land Bank because the Land Bank is prohibited by federal statute, 12 U.S.C. Sec. 2017,[1] to make a loan on real property unless it receives the first mortgage on the property. To circumvent that obstacle, the debtors obtained, through Crittenden, a written commitment for title insurance on the farms that did not reflect either of the Connecticut mortgages and that showed Chicago Title as the insurer.
 
 
 4
 On March 25, 1981, N.S. Garrott & Sons and the nondebtor owners of the farms executed a 35-year promissory note in the amount of $2,850,000 in favor of the Land Bank. The note was secured by "first" mortgages on the two farms.
 
 
 5
 On March 30, 1981, N.S. Garrott & Sons and some of the nondebtor owners of the two farms executed an escrow agreement with Crittenden. The escrow agreement, drafted by Crittenden, states that the owners of the two farms agree to pay to Crittenden $1,707,358 "for the purpose of having [Crittenden] deposit the same in an Escrow Account with a designated Bank or Banks for the purpose of paying the future payments due on the [Connecticut mortgages] so that all payments will be made by [Crittenden] on the dates that the same become due." The agreement provided that the deposited $1,707,358 was to be invested "in order that the payments of principal and interest due Connecticut Mutual Life Insurance Company and Connecticut General Life Insurance Company shall be made on time." The agreement further provided that "[a]ll interest earned by the investment of said funds shall become a part of the Escrow Fund and shall be held by [Crittenden] for payment of principal and interest due on [the Connecticut mortgages]" and that the excess interest should be withdrawn by Crittenden and paid to the owners of the two farms. Crittenden was to consult with the owners of the two farms regarding the investment of the funds, but in the event of a disagreement, the decision of Crittenden was final and controlling. The agreement could not be changed orally. Further, if the lands were sold, the mortgages were to be fully paid from the Escrow Fund.
 
 
 6
 On the same day, March 30, 1981, Crittenden executed a custody agreement with Union Bank. In the custody agreement, Crittenden agreed to deposit the funds received from the owners of the two farms pursuant to the escrow agreement, and Union Bank agreed to manage the funds as directed by Crittenden. Also on March 30, 1981, Union Bank received $1,707,358 and established Crittenden's account. Thereafter payments were made to the Connecticut mortgage holders.
 
 
 7
 On or about June 10, 1981, Crittenden issued a title policy to the Land Bank regarding the two farms that did not reflect the Connecticut mortgages.
 
 
 8
 Approximately a year later, the debtor, N.S. Garrott & Sons, executed a letter of credit agreement with Union Bank under which Union Bank issued a standby letter of credit in favor of Wells Fargo Ag. Credit Corp. (Wells Fargo). In connection with the letter of credit agreement, the debtor executed a promissory note in the amount of $250,000 and granted Union Bank a security interest in the excess interest not needed to pay the Connecticut mortgages.
 
 
 9
 On November 15, 1983, the three separate debtors, the N.S. Garrott & Sons partnership, the Eastern Arkansas Planting Company partnership and the joint venture, each filed Chapter 11 petitions in bankruptcy court. The petitions were consolidated. On January 5, 1984, the debtors filed a complaint for a turnover order against Union Bank requesting that the bank turn over the funds in the Crittenden account. On January 13, 1984, debtors amended the complaint to name Crittenden as an additional party defendant. A hearing was held. Chicago Title was permitted to intervene and to file briefs. Crittenden and Chicago Title opposed the turnover request. On February 21, 1984, the bankruptcy court entered Findings of Fact, Conclusions of Law and Turnover Order granting the relief sought by the debtors.
 
 
 10
 Crittenden and Chicago Title filed appeals in the district court. On August 30, 1984, the district court entered an order affirming the bankruptcy court decision in all respects. These appeals followed.
 
 DISCUSSION
 
 11
 The central issue in this case[2] is whether the district court erred in ruling that the entire fund sought by the debtors' turnover complaint was property of the estate within the meaning of section 541. Section 541(a)(1) of the Bankruptcy Code provides that the estate is comprised of all legal or equitable interests of the debtor in property, wherever located, as of the date the case is commenced. 11 U.S.C. Sec. 541(a)(1). The legislative history makes note of the broad scope of the definition, but also makes clear that the definition was not designed to enlarge the debtor's rights against others beyond those existing at the commencement of the case. S.REP. NO. 95-989, 95th Cong., 2d Sess. and H.R.REP. NO. 95-595, 95th Cong., 2d Sess. reprinted in 1978 U.S.CODE CONG. & AD.NEWS 5787, 5868, 6323. In fact, the broad definition of the debtor's estate is modified and limited by subsection (d) of section 541 of the Code. 11 U.S.C. Sec. 541(d) states:
 
 
 12
 Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest * * * becomes property of the estate under subsection (a) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.
 
 
 13
 Thus, where the debtor holds bare legal title without any equitable interest, the estate acquires bare legal title without any equitable interest.
 
 
 14
 The theme that the scope of the statutory provision is broad, but that the concept of property of the estate is not without limits is also present in the case law. In a recent case, United States v. Whiting Pools, Inc., 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the Supreme Court construed section 541(a), its legislative history and interpreted the scope of the statutory provision to be broad. However, notwithstanding the broad scope of section 541(a) the Supreme Court noted that "[t]he legislative history indicates that Congress intended to exclude from the estate property of others in which the debtor had some minor interest such as a lien or bare legal title." Id. at 2313 n. 8. Likewise, this court has also indicated that the concept of property of the estate is subject to refinement. In re Flight Transportation Corp. Securities Litigation, 730 F.2d 1128, 1136 (8th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985).
 
 
 15
 In the instant case the district court held that the entire fund came within the statutory definition of property of the estate because the debtors retained the right to receive any excess interest and the right to require that the funds be used to pay off the Connecticut mortgages. In light of our discussion of section 541 and its legislative history suggesting that an interest limited in the hands of the debtor is equally limited in the hands of the estate, we think the district court's analysis was incorrect because it failed to take into account the limited nature of the debtors' interests, particularly in the main fund, separate from any excess interest. Thus, our focus is directed to consider what interests, if any, the debtors retained in the fund apart from the excess interest in 1983 and the exact nature of those interests.
 
 
 16
 Our inquiry must begin with state law for the Bankruptcy Code does not provide rules for deciding whether a debtor has an interest in any particular property. 4 COLLIER ON BANKRUPTCY p 541.02 (L. King 15 ed. 1985). The nature and extent of the debtor's interest in property are determined by state law. Id. Property rights under section 541 are defined by state law. Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). However, once that determination is made, federal bankruptcy law dictates to what extent that interest is property of the estate.
 
 
 17
 At issue here are competing interests in a large sum of money originally obtained by the debtors through a very questionable scheme. In 1981 the debtors obtained a loan of $2,850,000 from the Land Bank by means of a commitment for title insurance which debtors knew to contain false information. To obtain the title insurance commitment that reflected inaccurate information, the debtors agreed to pay off the first mortgages held by the Connecticut companies by means of an escrow agreement with Crittenden. It is clear from the record that the debtors and Crittenden intended payment of the Connecticut mortgages through the escrow as an essential and integral part of the title insurance arrangement. Indeed, in exchange for the insurance commitment which enabled the debtors to acquire the $2,850,000 loan, the debtors transferred $1,707,538 of the proceeds of the loan to an account in Crittenden's name at the Union Bank for the express purpose of paying off the Connecticut mortgages. Custody and control over the entire fund was transferred to Crittenden in 1981. The only equitable interest the debtors retained was over that small part of the fund that constituted excess interest not needed to pay the Connecticut mortgages and that excess interest was assigned to Union Bank on June 14, 1982.
 
 
 18
 We think these facts and equitable principles justify the imposition of a constructive trust under state law. A constructive trust is an equitable remedy imposed under circumstances where it would be unfair for the owner of the property to enjoy the beneficial interest and would result in his unjust enrichment. According to Arkansas law a constructive trust "is an implied trust that arises whenever it appears from the accompanying facts and circumstances that the beneficial interest should not go with the legal title." Horton v. Koner, 12 Ark.App. 38, 671 S.W.2d 235, 238 (1984). Although not a classic case for the imposition of a constructive trust, we are satisfied that debtors had no cognizable equitable interests in the main fund in 1983. Based upon the facts of this case and our review of the record, we find that the debtors retained, at most, only bare legal title to the main fund in 1983. We are led to this conclusion because we think debtors' conduct gives rise to the imposition of a constructive trust under Arkansas law and general principles of equity.
 
 
 19
 Imposition of a constructive trust under state law upon a debtor's property generally confers on the true owner of the property an equitable interest in the property superior to the trustee's or debtors in possession. In re Quality Holstein Leasing, 752 F.2d 1009, 1012 (5th Cir.1985). The estate succeeds to only such title and rights in the property as the debtor had at the time the petition was filed. See Georgia Pacific Corp. v. Sigma Service Corp., 712 F.2d 962, 968 (5th Cir.1983). Thus, where under state law the debtor's conduct gives rise to a constructive trust, so that the debtor holds only bare legal title to this property, subject to a duty to reconvey it to the rightful owner, the estate will generally hold property subject to the same restrictions. In re Flight, supra, 730 F.2d at 1136.
 
 
 20
 So, while we agree with the district court that the entire fund is technically property of the estate, we cannot agree that the debtors' interests in the main fund are unlimited. Since the estate cannot acquire greater interests than those which the debtors had, we conclude that the estate holds the main fund, apart from the excess interest, in trust, subject to the equitable interests of others. As such the bankruptcy court is bound to recognize those equitable interests. Georgia Pacific Corp. v. Sigma Service Corp., supra, 712 F.2d at 968.
 
 
 21
 Accordingly, we affirm the turnover order but remand this case to the district court to direct debtors to set aside and eventually pay over the sums necessary to fully satisfy the Connecticut mortgages. After payment of the Connecticut mortgages in full, any amounts remaining shall constitute property of the estate and be subject to disposition in accordance with the bankruptcy court's previous rulings.
 
 
 
 *
 The HONORABLE JAMES H. MEREDITH, Senior United States District Judge for the Eastern District of Missouri, sitting by designation
 
 
 [1]
 12 U.S.C. Sec. 2017 provides:
 Loans originated by a Federal land bank or in which it participates with a lender which is not a Farm Credit System institution shall not exceed 85 per centum of the appraised value of the real estate security, or such greater amount, not to exceed 97 per centum of the appraised value of the real estate security, as may be authorized under regulations of the Farm Credit Administration for loans guaranteed by Federal, State, or other governmental agencies, and shall be secured by first liens on interest in real estate of such classes as may be approved by the Farm Credit Administration. The value of security shall be determined by appraisal under appraisal standards prescribed by the bank and approved by the Farm Credit Administration, to adequately secure the loan. However, additional security may be required to supplement real estate security, and credit factors other than the ratio between the amount of the loan and the security value shall be given due consideration.
 
 
 [2]
 Because of our disposition of this issue, it is unnecessary to address appellants' other contentions on appeal