**MILLERS NATIONAL INSURANCE COMPANY, Appellant,**

v.

**COMMERCIAL CREDIT BUSINESS LOANS, INC., Appellee.**

No. 89–5087.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 11, 1989.

Decided Jan. 4, 1990.

William A. Schlossman, Jr., Fargo, N.D., for appellant.

Mervin Nordeng, Fargo, N.D., for appellee.

Before MAGILL, Circuit Judge, FLOYD R. GIBSON, Senior Circuit

Judge, and LARSON,* Senior District Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Millers National Insurance (Millers) appeals from the district court's [1] order denying its motion for summary judgment and granting Commercial Credit Business Loans' (CCBL) motion for summary judgment in this action alleging conversion and unjust enrichment. Although we discuss proceedings that occurred in a related bankruptcy case from Iowa as integral to the background of this case, no order of that court, unfortunately, is under review in this court. Our opinion reviews the cross-motions for summary judgment.

## I. BACKGROUND

The facts of this case (which are undisputed and come from the parties' stipulation) begin with an Iowa corporation called Central States Grain (CSG) which was a warehouser with a facility in Anselm, North Dakota, where it stored sunflower seeds for growers. In June of 1981 CSG borrowed money from CCBL, the appellee, and signed a security agreement which, among other things, gave CCBL a perfected security interest in CSG's sunflower inventory. Also in June of that year, CSG purchased a warehouseman's bond from Millers, the appellant. The bond is for the protection of the growers, and the law provides that the North Dakota Public Service Commission (PSC) be appointed a trustee of warehouse inventory to protect the growers' interests when a warehouser becomes insolvent,[2] which is, of course, what became of CSG.

By the following fall (late 1982), CSG ran into financial difficulties and was not fully paying the amounts owed to growers who stored sunflowers at Anselm. In mid-1983, CSG failed to honor checks which it had issued to growers. Perhaps smelling

death, CCBL foresaw the inability of CSG to meet its loan obligations and recommended that CSG file for bankruptcy in Iowa. CSG filed under Chapter 7 on July 27, 1983. By August a bankruptcy trustee was appointed and acting on CSG's behalf in Iowa. Meanwhile, on the same day that CSG filed for bankruptcy, the PSC in North Dakota petitioned in state court to be appointed trustee for the benefit of the unpaid growers. The North Dakota state court approved the appointment as of August 16, 1983.

The bankruptcy trustee had begun to allow shipments of sunflowers out of the Anselm facility by August. By October the trustee had liquidated most of CSG's inventory there and paid the proceeds to CCBL because of its perfected security interest. The PSC did not contest these disbursements in the bankruptcy court. Instead, the PSC filed suit in North Dakota state court against Millers to recover the penal sum of the bond purchased by CSG pursuant to state law.[3] That court awarded the PSC some $220,000 in claims and interest under the bond. The Supreme Court of North Dakota affirmed that judgment against Millers in *North Dakota Public Service Commission v. Central States Grain, Inc.*, 371 N.W.2d 767 (N.D.1985). Millers made good on the bond by paying the PSC as trustee for the growers on October 24, 1985. In return, Millers became an assignee of the PSC as to all its rights under the North Dakota trust law.

Back in bankruptcy court in Iowa in April of 1984 CCBL began an adversary action against the trustee, Millers, and CSG to have the remaining CSG inventory proceeds paid over to CCBL. Millers cross-claimed, asking the trustee to turn the proceeds over to Millers instead. The bankruptcy court did not resolve the adversary action, and CCBL took a dismissal without prejudice. Millers withdrew its cross-claim and reserved the right to pursue its claim

---

* THE HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

1. The Honorable Rodney S. Webb, United States District Judge for the District of North Dakota.

2. N.D.Cent.Code § 60–04–03 (1985). An earlier version of the statute was actually in operation in 1983.

3. *Id.* at § 60–04–06 (1985).

against CCBL in North Dakota state court. The final order of the bankruptcy court, dated September 24, 1985, paid the balance of the inventory proceeds to CCBL as holder of a perfected security interest in CSG inventory and recognized Millers' reservation of rights against CCBL.

Exercising those rights, Millers filed suit in North Dakota district court alleging conversion and unjust enrichment by CCBL. CCBL removed to federal district court. Once there the parties filed a stipulation of facts and on cross-motions for summary judgment sought determination as a matter of law from the district court. Following the recommendation, but not all the reasoning, of the magistrate,[4] the district court granted CCBL's motion and denied Millers' motion.[5] We draw on the opinions of both the magistrate and the district court.

## II. DISCUSSION

Millers asks two questions: 1) whether North Dakota law created a trust in CSG's inventories upon its insolvency which was an interest superior to CCBL's security interest in that inventory and 2) whether Millers can recover from CCBL based on conversion or unjust enrichment on CCBL's part. The North Dakota Supreme Court has answered a question similar to the first question affirmatively in *North Dakota Public Service Commission v. Valley Farmers*, 365 N.W.2d 528 (N.D.1985). However, whether that court would hold the same under the facts of this case is disputable. In any event, it is not clear that an answer to the first question is necessary to answer the second question, which is really all that is before this court: that is, whether Millers has shown the requisite elements of conversion or unjust enrichment to entitle it to summary judgment. Like the magistrate, we believe that Millers does not have a case of conversion or unjust enrichment, regardless of how one answers the first question. Neverthe-

less, we will address that question because it helps to put the case into perspective as we review the district court's order.

The goal of Millers as an assignee of the PSC was to show that either the PSC or the sunflower growers had an interest in the CSG inventories, to which Millers has succeeded, superior to the secured interest of CCBL. The *Valley Farmers* case gives growers that superiority. There the North Dakota Supreme Court declared that the interests of warehouse receipt holders (growers) took priority over the security interests of financial lenders in order to effectuate the purpose of the trust statute, protection of the growers. *Id.* at 540. Millers claims that it stands in the shoes of the PSC which, as trustee, stood in the shoes of the growers, and thus Millers has an interest in the inventory of CSG superior to CCBL's interest.

We are not convinced that the North Dakota Supreme Court would agree with Millers. The rationale from *Valley Farmers* was the protection of growers, not the protection of bondsmen and insurers like Millers. The *Central States Grain* opinion, in fact, suggests that the PSC was not derelict in any of its duties as protector of the growers and that the bankruptcy court was the best forum for resolution of priority disputes. *Central States Grain*, 371 N.W.2d at 774. Thus, even assuming Millers' argument correctly analyzes North Dakota priority law and the status the North Dakota Supreme Court would give Millers, it is not clear that Millers has anything to gain from it now.

If Millers is correct, the bankruptcy court in Iowa should have established different priorities for distribution of CSG's inventory proceeds. Instead the bankruptcy court simply paid the proceeds to CCBL as the first priority secured creditor. The PSC made no complaint to the bankruptcy court about the disbursements to CCBL.

---

4. The Honorable Karen K. Klein, United States Magistrate for the District of North Dakota.

5. The district court did not believe that Millers was inappropriately pursuing its remedies outside of bankruptcy because the bankruptcy court had declined to answer the state law ques-

tion and its final order expressly recognized Millers' right to pursue its remedy in state court. The magistrate's opinion suggests that perhaps Millers sat on its rights while the bankruptcy action proceeded.

In fact, it was not until 1984 in CCBL's adversary action for the remaining CSG inventory proceeds that the bankruptcy court was apprised of the argument that North Dakota law might suggest a different order of priority. By then a final order in the CSG bankruptcy was on the horizon and the bankruptcy court declined to address the question.[6] Absent an appeal from that final order, Millers was left with arguing a conversion/unjust enrichment case in state court in North Dakota.

Whatever the priorities should have been in CSG's bankruptcy, they do not make out a case of conversion or unjust enrichment on the part of CCBL. CCBL may in fact be the beneficiary of misapplication of North Dakota law by the Iowa bankruptcy court, but that does not make CCBL the wrongful possessor of funds by conversion or unjust enrichment. No order of the bankruptcy court was challenged by any appeal, and it is beyond the power of this court to now change anything that occurred there. We note that we have said all this on the assumption that Millers' view of North Dakota law was correct. That may not be the case.

The district court rejected Millers' view under the belief that the North Dakota trust statute created no lien in favor of Millers because the PSC never took possession of the inventory of CSG. Thus, according to the district court, the inventory became part of the bankruptcy estate and could not have a dual identity as part of a statutory trust as well. If the statute meant to create a trust without possession by the PSC, the district court said, it would have provided for a pre-appointment trustee with means to attach the CSG inventory.

The district court took this view based on its reading of *Central States Grain*. That case affirmed Millers' liability on its bond to CSG, declining to release Millers because of the PSC's failure to pursue a "questionable claim in an Iowa bankruptcy court." *Central States Grain*, 371 N.W.2d at 775. The district court concluded that that language from the North Dakota Supreme Court implicitly suggested that the PSC had no interest superior to CCBL's interest absent possession of the inventory by the PSC.[7] Thus because the PSC never took possession, it never held any interest in CSG's inventory superior to that of CCBL, nor did Millers as the assignee of the PSC.[8]

However, as Millers points out, *Central States Grain* is subject to another reading. Millers suggests that the North Dakota Supreme Court was not really addressing the priority question at all, but was simply passing on the propriety of the PSC's decision to pursue the bond rather than an action in the Iowa bankruptcy court. That view does seem as plausible as the district court's contrary suggestion, especially because the North Dakota Supreme Court concluded that the PSC might have made an attempt to recover the inventory proceeds in the bankruptcy court, but under the circumstances of the case did not have to before suing on the bond. *Central States Grain*, 371 N.W.2d at 775.

But again, we think it does not matter what order of priority the North Dakota Supreme Court would establish. That court's opinion in *Central States Grain* does not inform our decision about Millers' claim for conversion or unjust enrichment. CCBL, whatever its priority should have been in the bankruptcy court, is not now in

---

6. Millers has argued that the bankruptcy court rightly declined to address the question because it would not have been part of a core proceeding over which that court would have had jurisdiction. No appeal from the bankruptcy court is before us, and we do not have to decide if resolution of the question would have been part of a core proceeding or not, although we suspect it would have been because the question would have resolved a priority question involving substantial assets of the debtor.

7. This view seems to be supported by a later 1983 legislative enactment directing the PSC to take possession of warehouse contents upon its appointment as trustee. *See* N.D.Cent.Code § 60–04–03.2 (1985).

8. This, of course, is the priority question we believe is unnecessary for determination of this case. Therefore, while we affirm the district court, we express no opinion on the view of North Dakota priority law it expressed in this case.

*wrongful* possession of anything belonging to the growers, the PSC, or Millers.

## III. CONCLUSION

Because it is neither necessary nor wise for this court to reach a decision on whether CCBL or Millers had priority under North Dakota law in CSG's inventory proceeds, we expressly decline to do so. We have devoted much of our opinion to discussion of this question to clearly respond to Millers' arguments and to demonstrate that, despite the fact that Millers may be correct in its view of the priority law of North Dakota, the issue does not resolve the summary judgment question on conversion and unjust enrichment before us.

That question is as simply disposed of as the magistrate wrote, "[w]hile CCBL's security interest may arguably have been inferior to Millers' subrogation interest [as assignee of the PSC] under North Dakota Law [as in *Valley Farmers* ]; CCBL's acquisition of the proceeds from the bankruptcy trustee and its retention of the proceeds were nonetheless legally authorized." Magistrate's Report and Recommendation at 6, Appendix at A–122. No showing of wrongfulness by CCBL amounting to conversion or unjust enrichment was made.[9] Millers seems to believe that if it could convince us of its priority over CCBL that would, *a priori*, show conversion or unjust enrichment. We do not believe that it would. Right or wrong about the priorities, we do not think Millers has made out a case for conversion or unjust enrichment under North Dakota law absent any wrongful conduct on the part of CCBL.

For the reasons we have given, we believe summary judgment was correctly entered in CCBL's favor,[10] and affirm the result from the district court.

---

**9.** For cases discussing the elements of conversion and unjust enrichment in North Dakota, respectively, see *Dairy Department v. Harvey Cheese, Inc.,* 278 N.W.2d 137, 144 (N.D.1979) and *D.C. Trautman Co. v. Fargo Excavating Co.,* 380 N.W.2d 644, 645 (N.D.1986).

**10.** We note, as the district court did in its order, that this result is not as harsh as it appears for the reason that the North Dakota trust statute was designed to benefit the growers and not Millers. Nor would Millers enjoy the same equitable standing as the growers if the priority

question were before us. Thus, Millers' reliance on *In re N.S. Garrott & Sons,* 772 F.2d 462 (8th Cir.1985), is misplaced. In that case we felt Arkansas law, the facts of the case, and principles of equity, allowed for the creation of a constructive trust. *Id.* at 467. In this case we are not certain (and have declined to determine as unnecessary to our decision) what North Dakota law allows, nor do we find the facts or equities in Millers' favor. Finally, in *Garrott,* unlike in Millers' case, the appeal arose out of the proceedings in bankruptcy.