**In re Bernard J. ROSENSHEIN d/b/a Rosenshein Associates, et al., Debtors.**

**Bankruptcy Nos. 90 B 21262, 90 B 21268.**

United States Bankruptcy Court, S.D. New York.

Feb. 3, 1992.

Ohrenstein & Brown, New York City, for debtors.

Waters, McPherson, McNeill, Rosen, Secaucas, N.J., for Creditors' Committee.

Duane, Morris & Heckscher, Philadelphia, Pa., for EAB.

Reich & Reich, White Plains, N.Y., for First American Title Ins. Co.

Kirschenbaum & Kirschenbaum, P.C., Garden City, N.Y., for Toys "R" Us.

## DECISION ON MOTION FOR AN ORDER DIRECTING DISTRIBUTION AND RETURN OF ESCROW FUNDS

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

European American Bank ("EAB"), which advanced development money to the Chapter 11 debtors for the construction of a shopping center in Yonkers, New York, on real estate purchased by the debtors from Toys "R" Us ("Toys"), now moves for an order directing the distribution and return of the funds held by EAB in escrow. The escrow fund was established to induce the title company, First American Title Insurance Company of New York ("First American"), to issue a title policy in connection with the debtors' development of the real estate. First American joins in EAB's motion.

The debtors, Bernard J. Rosenshein d/b/a Rosenshein Associates, Rosenshein Development Corp. ("Development") and the seller of the real estate, Toys, oppose EAB's motion for different reasons. The debtors contend that the escrow fund is property of the estate within the meaning of 11 U.S.C. § 541 because EAB furnished development money to the debtors, and Bernard J. Rosenshein issued his check to EAB for the creation of the escrow fund. The seller, Toys, opposes EAB's motion because it claims that it is a third party beneficiary of the escrow fund on the theory that if it is liable to the debtors for selling real estate with a defect in title, it may look to the title company, First American, for reimbursement.

EAB and the title company argue that the escrow fund was created by EAB solely on condition that the title company, First American, would issue a title policy to EAB to protect EAB's $10,500,000.00 loan to the debtors. The policy was a condition precedent to EAB's advancing development funds to the debtors. Accordingly, EAB and First American reason that if they both agree to cancel the conditions pursuant to which the escrow fund was created and the title policy was issued, such cancellation should be exclusively a matter between EAB and First American. Therefore, they argue that neither the debtors nor Toys may prevent them from cancelling their obligations to one another.

The unsecured creditors' committee opposes EAB's motion and agrees with the debtors that the escrow fund is property of the estate because the amount of the escrow fund, $2,232,559.00, is equivalent to the amount of the purchase money mortgage held by the seller, Toys. Therefore, if the title acquired by the debtors from Toys is defective, and Toys obtains a foreclosure judgment, the escrow fund will be used to satisfy the title company's liability to EAB and to maintain EAB's junior secured position. As a practical matter, this would be accomplished by the title company's satisfaction of Toys' foreclosure judgment.

The significance of the skirmishing between the parties is magnified by the fact that an undiscovered easement affecting the real estate in question has apparently emerged and is now in dispute. Additionally, Toys commenced a prepetition mortgage foreclosure action against the debtors in state court where the debtor asserted counterclaims including that Toys conveyed a defective title to the debtors because of the existence of an undiscovered easement affecting the real estate in question. The purchase money mortgage held by Toys is now fully due in accordance with its self-contained duration. Therefore, the debtors and the creditors' committee argue that if the debtors acquired a defective title from Toys, the title company would be required to remedy the defect, including applying the escrow fund in payment of the purchase money mortgage held by Toys. Therefore, it is argued that the escrow fund benefits the debtors and is property of the estate.

EAB disputes that the escrow fund is property of the estate and asserts that it need not pay off the purchase money mortgage held by Toys because the escrow fund was established to protect the title company and to induce it to issue a policy with respect to EAB's loans. EAB argues that the title company need not first satisfy the Toys' mortgage even if Toys successfully forecloses on its purchase money mortgage and wipes out EAB's junior secured interest with respect to the development funds advanced to the debtors.

Finally, the opponents to EAB's motion argue that it is premature to order any distribution now while Toys' mortgage foreclosure proceeding is pending. They contend that any distribution of the escrow fund should await a resolution of the debtors' claim that they acquired a defective title to the real estate in question.

## FINDINGS OF FACT

1. On December 6, 1990, the debtor, Bernard J. Rosenshein and various entities which he controlled, including Development filed separate petitions with this court for relief under Chapter 11 of the Bankruptcy Code. The debtors thereafter continued in possession and control of their properties and businesses as debtors in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

2. On December 7, 1990, this court entered an order procedurally consolidating the various Rosenshein entities for administrative purposes only.

3. On December 17, 1986, the debtor, Development and Toys entered into a contract whereby Toys agreed to sell to Development real estate in Yonkers, New York. The contract provided that Development would pay to Toys the sum of $100,000.00 upon the execution of the contract and the balance of $2,100,000.00 would be paid at the closing in the form of a promissory note executed by Development, secured by a purchase money mortgage in favor of Toys, with interest at twelve percent per annum.

4. Pursuant to the contract of sale, Development was required to obtain a title report from First American certifying to Development the status of title to the premises. First American issued its title report which did not disclose the existence of any encumbrances other than certain permitted encumbrances. At the closing, Development accepted delivery of a deed from Toys and executed and delivered to Toys a purchase money note and mortgage for $2,100,000.00.

5. After the transfer of title, the debtors claimed that they subsequently became aware of an easement impairing Development's title which was created by a predecessor in title running in favor of an adjoining property owner referred to as the "Loper Easement."

6. Upon learning of the Loper easement, Development refused to make the required purchase money mortgage payments to Toys. Consequently, Toys commenced an action in the Supreme Court of the State of New York, County of Westchester against the debtors seeking to foreclose the purchase money mortgage and a judgment to enforce Rosenshein's personal guarantee.

7. The debtors answered the complaint and asserted various counterclaims for fraud, breach of contract, fraud in the inducement, setoff of the purchase price against the purchase money mortgage and fraudulent misrepresentations by Toys.

8. Thereafter, in February of 1988, the debtors sought to borrow $8,070,000.00 from EAB for the purpose of constructing a commercial building on the real estate which Development purchased from Toys. EAB agreed to advance a construction loan to the debtors provided that the loan was secured by a first mortgage lien against the property. The title company, First American, would not issue a mortgage policy of title insurance in favor of EAB while First American remained potentially liable to the debtors for failing to discover the Loper easement when it issued a title policy in connection with the debtors' purchase of the real estate from Toys. First American would only issue the mortgage title policy if it was provided with funds suffi-

cient to reimburse itself if it was liable to EAB in the event that the Toys mortgage foreclosure action was successful.

9. At the debtors' request, EAB agreed to make available to the debtors a second loan in the sum of $2,430,000.00, which was to provide the title company with an escrow fund as protection against the Toys' foreclosure action and to pay the costs of closing the loans.

10. At the closing of the loans on February 25, 1988, the debtors executed a mortgage note in the amount of $2,430,000.00 in favor of EAB and a building loan mortgage note in the amount of $8,070,000.00 in favor of EAB and executed supporting security documents. EAB then advanced to the debtors the sum of $2,232,559.00 for the purpose of being transferred by the debtors to an escrow fund to be held by EAB for the title company's protection (referred to as the "Acquisition loan"). EAB also advanced $8,070,000.00 to the debtors as a construction loan (referred to as the "Construction loan").

11. After the closing, the debtor, Bernard J. Rosenshein, delivered to EAB his check dated February 25, 1988 in the sum of $2,232,559.00, which was derived from the funds advanced by EAB to the debtors for the escrow fund. EAB then agreed to hold the escrow fund to reimburse the title company, First American, in the event of its liability to EAB should the Toys' mortgage foreclosure succeed against the debtors' property.

12. No formal escrow agreement was ever executed reflecting the agreement of the parties, although various drafts were prepared but not signed.

13. As a result of the two loans, the debtors were liable to EAB in the total sum of $10,500,000.00; $8,070,000.00 under the construction loan and $2,430,000.00 under the escrow loan. That a $10,500,000.00 loan from EAB to the debtors was contemplated by the parties can be seen from a memorandum contained in EAB's files, which states:

> As noted in prior memoranda, Mr. Rosenshein had previously been approved for a $10,500 M Construction loan with the

borrower to be Rosenshein Development Corp. Since Bernie and the title companies were still at odds over damages and delay caused by title issue, it was agreed that funds advanced by EAB to satisfy the PMM would be held in escrow pending resolution of these matters. The title company for EAB, First American, authorized EAB to deposit these funds in an EAB account subject to an escrow agreement to be drafted.

Trial Ex. # 1.

14. First American is also potentially liable to the debtors under the separate title policy which it issued to them in connection with the debtors' purchase of the real estate from Toys. However, the escrow fund was created in connection with the title policy issued by First American with respect to EAB's subsequent $10,500,000.00 loan to the debtors.

15. EAB and First American state that if EAB's motion for distribution is granted, and if the funds are distributed to EAB, EAB agrees to release First American from any liability under its title policy. EAB will then apply the escrow funds to reduce the debtors' outstanding obligations to EAB under the debtors' mortgage note.

## DISCUSSION

This case illustrates the old saying that it all depends on how you slice it. The debtors and the unsecured creditors' committee claim that the escrow fund held by EAB is property of the estate. They reason that the debtors received two loans totalling $10,500,000.00 from EAB, from which the debtors delivered a check to EAB for $2,232,559.00 to be held in escrow in connection with the Toys' mortgage litigation and the balance to be applied by the debtors towards the construction of a commercial building on the real estate in question.

EAB and First American argue that the escrow fund is not property of the estate and may be distributed in accordance with the agreement between EAB and First American. This position is bottomed on the view that EAB made two advances, and

that only the Construction loan, the second advance, was made to the debtor. The first advance, the Acquisition loan in the sum of $2,430,000.00, was advanced to protect First American, to induce it to issue a title policy to EAB in support of EAB's first mortgage lien against the real estate in question, and as protection against Toys' mortgage foreclosure action and the easement dispute. The second advance to the debtors was the Construction loan in the sum of $8,070,000.00. Thus, EAB and First American conclude that the fund from the Acquisition loan did not belong to the debtors and is not property of the debtors' estate, whereas the fund from the Construction loan admittedly belongs to the debtors and is property of the debtors' estate.

Toys joins EAB and First American in their argument that the escrow fund under the Acquisition loan is not property of the debtors' estate. However, Toys parts company with EAB and First American and opposes EAB's motion for distribution of the escrow fund because Toys argues that it is a third party beneficiary of the fund, which may not be distributed until Toys' purchase money mortgage is satisfied.

The critical issue in this case concerns whether or not the debtors have any interest in the escrow fund as property of the estate which would bar EAB and First American from cancelling their obligations to each other and distributing the escrow fund as they might agree. The concept of property of the estate is defined in 11 U.S.C. § 541(a)(1) to include "all legal or equitable interests of the debtor in property as of the commencement of the case." In *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the Supreme Court instructed that the scope of this statutory provision should be interpreted broadly, whereas property interests of others in which the debtor has some minor interest, such as a lien or bare legal title, should be excluded from this broad concept. In determining what interest the debtors in the instant case had in the escrow fund, reference must be made to state law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

After the debtor's property interest is determined under state law, federal bankruptcy law will dictate to what extent that interest is property of the estate. *In re N.S. Garrott & Sons*, 772 F.2d 462, 466 (8th Cir.1985), *rehearing den.* (Oct. 14, 1985) (en banc).

According to New York law, a debtor who deposits funds in escrow retains a right to the funds and the incidents of ownership until the escrow conditions are satisfied. *Alexander v. Quality Leather Goods Corp.*, 150 Misc. 577, 269 N.Y.S. 499 (1934); *Press v. Marvalan Industries, Inc.*, 422 F.Supp. 346, 349 (S.D.N.Y.1976); *In re Pan Trading Corp. S.A.*, 125 B.R. 869, 878 (Bankr.S.D.N.Y. 1991) (depositor of funds in escrow retained interest until the happening of prescribed contingencies). Where state law bars a debtor from having an interest in an escrow fund, and instead, requires the imposition of a constructive trust on the debtor's reversionary interest because of the debtor's inequitable conduct, such minimal or bare legal interest, will not support a broad application of the bankruptcy concept of property of the estate with respect to the escrow fund. *Garrott*, 772 F.2d at 467. In the *Garrott* case the debtor wished to obtain a loan from a bank on certain real estate encumbered by a first mortgage. The bank was precluded by law from making a loan on real estate unless it received a first mortgage on the property. To circumvent this obstacle, the debtor obtained a written commitment from a title company for title insurance on the real property. The debtor and others executed an escrow agreement with the title company whereby the title company controlled a fund in escrow deposited by the debtor and others for the purpose of making payments to the first mortgagee in accordance with its mortgage. The title company then issued a title policy to the bank that did not reflect the first mortgage on the debtor's property. Thereafter, the debtor filed a Chapter 11 petition for reorganization and the Bankruptcy Code and requested that the escrow agent turn over the funds to the debtor. The bankruptcy court held that

the entire escrow fund was property of the estate. The district court affirmed the bankruptcy court's ruling. On appeal, the Court of Appeals reversed both lower courts and held that it would be unfair for the debtor to enjoy a beneficial interest in the escrow fund and that such result would be unjust enrichment. Hence, a constructive trust was imposed on the escrow fund subject to the equitable interests of the first mortgagee. After the payment of the first mortgagee, any remaining amounts would be regarded as property of the debtor's estate within the meaning of 11 U.S.C. § 541(a). Had the debtor not been guilty of inequitable conduct, the entire fund would have been regarded as property of the estate.

So, while we agree with the district court that the entire fund is technically property of the estate, we cannot agree that the debtors' interests in the main fund are unlimited. Since the estate cannot acquire greater interests than those which the debtors had, we conclude that the estate holds the main fund, apart from the excess interest, in trust, subject to the equitable interests of others. As such the bankruptcy court is bound to recognize those equitable interests.

*Garrott*, 772 F.2d at 467 (citation omitted).

In *Wilson v. United Savings of Texas (In re Missionary Baptist Foundation of America, Inc.*), 792 F.2d 502 (5th Cir.1986), the debtor's predecessor in interest with respect to a nursing home established an escrow fund for the purpose of covering expenditures for capital improvements, taxes and insurance throughout the life of a bank loan obtained by the debtor's predecessor for those purposes. The debtor sold the nursing home before it filed a Chapter 11 petition and was relieved of any further liability for expenditures for the property. The Chapter 11 trustee sought a turnover of the escrow funds as property of the estate, even though the debtor's predecessor in interest, and not the debtor, had deposited the funds in escrow. The lending bank opposed the trustee's turnover application. Judge Edith H. Jones, writing for the Eighth Circuit Court of Appeals, affirmed the lower courts' rulings that the

funds were property of the debtor's estate even though the debtor's obligation to make capital expenditures for the property was extinguished when it sold the nursing home. The amounts on deposit in the escrow fund exceeded the debtor's total annual liabilities so that the excess funds reverted to the debtor and not to the lending bank. *Id.*

■ Similarly, where a debtor transfers accounts receivable as security for a loan, the debtor continues to enjoy an interest in any surplus so that the assigned receivables constitute property of the debtor's estate as expressed in 11 U.S.C. § 541(a). *Dewhirst v. Citibank (Arizona), (In re Contractors Equipment Supply Co.*, 861 F.2d 241 (9th Cir.1988).

The cases the movants cite in support of their position that the escrow fund held by EAB does not constitute property of the estate simply do not stand for this principle. All but one of the cases stand for the proposition that funds placed in escrow by a debtor cannot be recovered by a trustee in bankruptcy as a voidable preferential transfer if the deposit occurred beyond the 90-day preference period despite the fact that the release date was within the 90-day period. *Cate v. Nicely (In re Knox Kreations, Inc.)*, 656 F.2d 230, 231 (6th Cir. 1981); *Aspen Data Graphics v. Boulton (In re Aspen Data Graphics, Inc.)*, 109 B.R. 677, 682 (Bankr.E.D.Pa.1990); *In re Coco*, 67 B.R. 365, 369 (Bankr.S.D.N.Y. 1986); *Hassett v. Blue Cross and Blue Shield of Greater New York (In re O.P.M. Leasing Services, Inc.)*, 46 B.R. 661 (Bankr.S.D.N.Y.1985). The one case cited by EAB which did not involve a preferential transfer issue was also inapplicable because the debtor was the escrow agent and not the depositor of the funds, so that the debtor had no beneficial interest in the funds. *In re Summit Airlines, Inc.*, 102 B.R. 32 (E.D.Pa.1989).

In the instant case, it is not claimed that the debtors were guilty of any misconduct or fraud. They received the $10,500,000.00 loan from EAB and immediately thereafter issued a check to EAB in the sum of

$2,232,559.00 for the purpose of having the proceeds held by EAB in escrow as an inducement for First American's issuance of a mortgage insurance policy to EAB with respect to EAB's $10,500,000.00 loan to the debtors. As stated in the *Garrott* case, "the entire fund is technically property of the estate...." *Garrott,* 772 F.2d at 467. Although the movants argue that the debtors were merely acting as a conduit for the funds, they overlook the significant fact that the debtors did more than simply deposit the check with EAB to be held in escrow; the debtors signed mortgage notes for both the Acquisition loan and the Construction loan, totalling $10,500,000.00. Having assumed the $2,430,000.00 Acquisition loan, and having deposited the proceeds of the Acquisition loan in an escrow account held by EAB, it cannot now be said that the debtors have no beneficial interest in the escrow fund. Unless or until the conditions of the escrow arrangement are satisfied, the debtors continue to have a beneficial interest in the Acquisition fund, which interest constitutes property of the estate within the meaning of 11 U.S.C. § 541. *Garrott,* 772 F.2d 467. Accordingly, EAB and First American may not distribute or dispose of property of the estate as they see fit.

Having determined that the escrow fund is property of the estate under 11 U.S.C. § 541, the court need not address the argument that Toys is a third party beneficiary of the fund other than to note that the escrow fund was created with respect to the Construction loan rather than the earlier purchase money mortgage loan. The collateral for the purchase money loan which Toys advanced to the debtors is the real estate in question and not the escrow fund. Toys may look to the real estate and its pending mortgage foreclosure action, which this court allowed Toys to pursue when it previously modified the automatic stay for this purpose.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (D).

2. The $2,232,559.00 fund deposited by the debtors and held by EAB in escrow to induce First American to issue a mortgage title policy to EAB with respect to EAB's Construction loan to the debtors is property of the estate within the meaning of 11 U.S.C. § 541(a).

3. The joint motion filed by EAB and First American for an order authorizing EAB to distribute the escrow fund as they might agree is denied because they may not distribute or dissipate property of the estate.

SETTLE ORDER on notice.