# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 14-6033

_____

In re: Matthew Richard Peet; Marilynn Louise Peet

*Debtors*

-------------------------------

Matthew Richard Peet; Marilynn Louise Peet

*Debtors - Appellants*

v.

J. Kevin Checkett

*Trustee - Appellee*

_____

Appeal from United States Bankruptcy Court
for the Western District of Missouri - Springfield

_____

Submitted: February 25, 2015
Filed: April 22, 2015

_____

Before KRESSEL, SCHERMER, and NAIL, Bankruptcy Judges.

_____

NAIL, Bankruptcy Judge.

Matthew Richard Peet and Marilynn Louise Peet appeal the August 25, 2014 order of the bankruptcy court[1] overruling their objections to Trustee J. Kevin Checkett's proposed sales of some real property and a pickup. We affirm.

BACKGROUND

The Peets filed a petition for relief under chapter 13 of the bankruptcy code on December 5, 2011. When they filed their petition for relief, the Peets and Marilynn Peet's parents held title to real property in Missouri as joint tenants, and Marilynn Peet and her father held title to a 2005 Ford half-ton pickup registered in Missouri as joint tenants.

On the Peets' motion, the bankruptcy court converted the case to chapter 7 on January 23, 2014. Checkett was appointed the chapter 7 trustee.

Marilynn Peet's father passed away on April 14, 2014. Her mother passed away the following day.

That summer, the trustee proposed to sell the real property and the pickup. The Peets objected. The bankruptcy court overruled the Peets' objections and authorized the trustee to sell the real property and the pickup. The Peets timely appealed.[2]

---

[1]The Honorable Arthur B. Federman, Chief Judge, United States Bankruptcy Court for the Western District of Missouri.

[2]The bankruptcy court's August 25, 2014 order was not stayed. Presumably, the real property and the pickup have since been sold. This would ordinarily render the Peets' appeal moot. 11 U.S.C. § 363(m); *Sears v. U.S. Trustee* (*In re AFY*), 734 F.3d 810, 816-18 (8th Cir. 2013). However, by separate orders, the bankruptcy court directed the trustee to hold the proceeds from the sale of the pickup pending further order of the bankruptcy court and to hold the proceeds from the sale of the real property pending a final decision on appeal. Thus, even if the sales can no longer be

STANDARD OF REVIEW

The relevant facts are not in dispute. We review the bankruptcy court's conclusions of law *de novo*. *Pierce v. Collection Assoc., Inc.* (*In re Pierce*), 779 F.3d 814, 817 (8th Cir. 2015).

DISCUSSION

The filing of a petition for relief under the bankruptcy code creates a bankruptcy estate comprising, *inter alia*, all the debtor's legal and equitable interests in property on the petition date. 11 U.S.C. § 541(a)(1). State law determines the nature and extent of a debtor's interest in property. *N.S. Garrott & Sons v. Union Planters Nat'l Bank* (*In re N.S. Garrott & Sons*), 772 F.2d 462, 466 (8th Cir. 1985). However, federal law determines the extent to which a debtor's interest in property is property of the bankruptcy estate. *Id*.

Under Missouri law, a joint tenant "hold[s] by the moiety (or half) and by the whole." *Poetz v. Klamberg*, 781 S.W.2d 253, 255 (Mo. Ct. App. 1989).

> Joint tenancy is based on the theory that the tenants share one undivided estate, with the distinctive characteristic of the right of survivorship. Upon the death of any one of the joint tenants, the entire estate goes to the survivors, and so on to the last survivor, who attains sole ownership and exclusive possession. A joint tenancy can be destroyed by conveyance . . . by one or more of the joint tenants during the lifetime of the cotenants. A conveyance by a cotenant destroys the unity of title and converts the joint tenancy into a tenancy in common insofar as the interest of the particular joint tenant is concerned.

challenged, the disposition of the proceeds remains a live controversy.

-3-

*Remax of Blue Springs v. Vajda & Co.*, 708 S.W.2d 804, 806 (Mo. Ct. App. 1986) (citations omitted).[3]  A tenant in common, on the other hand, "holds an undivided interest in the whole by separate and distinct title, that interest consisting of his share of the tenancy."  *Poetz*, 781 S.W.2d at 255.

The Peets do not deny their interest in the real property and Marilynn Peet's interest in the pickup were property of the bankruptcy estate.  They instead argue the filing of their petition for relief severed the joint tenancies in the real property and the pickup and converted those joint tenancies to tenancies in common.

If the Peets are correct, on the petition date and at all relevant times thereafter, they each held an undivided one-quarter interest in the real property, and Marilynn Peet held an undivided one-half interest in the pickup.  The trustee would therefore be entitled to only half the proceeds from the sales of the real property and the pickup, less any portion thereof the Peets have exempted.[4]  If the Peets are mistaken, on the petition date, the Peets and Marilynn Peet's parents shared a single undivided estate in the real property, and Marilynn Peet and her father shared a single undivided estate in the pickup; when Marilynn Peet's father passed away, the entire undivided estate in the real property went to the Peets and Marilynn Peet's mother, and the entire undivided estate in the pickup went to Marilynn Peet; and when Marilyn Peet's mother passed away, the entire undivided estate in the real property went to the Peets. The trustee would therefore be entitled to the proceeds from the sales of the real property and the pickup, again less any portion thereof the Peets have exempted.

---

[3]A joint tenancy can also be destroyed by partition or by execution on a joint tenant's interest. *Remax of Blue Springs*, 708 S.W.2d at 806.  The Peets, however, do not suggest their joint tenancy in the real property or their joint tenancy in the pickup has been destroyed by either partition or execution.  *See* MO. STAT. chs. 528 (*Partition Suits*) and 513 (*Executions and Exemptions*).

[4]It appears the Peets have exempted $476.00 of the value of the pickup.

The Peets are mistaken: Nothing in the bankruptcy code[5] effects a conveyance of a debtor's interest in a joint tenancy that would sever the joint tenancy.[6]

> [The] concept [that the filing of a petition for relief severs a joint tenancy] is evidently from the fantasy world of make believe or born as a result of wishful thinking. It is just not true. The debtor does not transfer his title to 541 property of the estate but holds his title subject to the exercise by the trustee of [the trustee's] rights to sell, use or lease such property by appropriation under the "avoidance" or "strong arm" sections as typified by Sections 542, 543, 544, 545, 546 and 547 of the 1978 Act, as amended. . . . The trustee has no title to property of the estate until he elects to take affirmative action and proceedings are had or orders made.

*Whittington v. Gilbralter Sav. & Loan Assoc.* (*In re Spain*), 55 B.R. 849, 854 (Bankr. N.D. Ala. 1985). Other courts agree. *See*, *e.g.*, *In re Benner*, 253 B.R. 719, 721-23 (Bankr. W.D. Va. 2000) ("[T]here is no authority for the proposition that the filing of a Chapter 7 bankruptcy petition constitutes a conveyance of title to the Chapter 7 trustee which would sever the joint tenancy."); *Durnal v. Borg-Warner Acceptance Corp.* (*In re DeMarco*), 114 B.R. 121, 124 (Bankr. N.D.W. Va. 1990) (adopting

---

[5]The Peets do not identify any provision of Missouri law that would sever a joint tenancy upon the filing of a petition for relief. *Cf.* MINN. STAT. § 500.19, subd. 5 ("A severance of a joint tenancy interest in real estate by a joint tenant shall be legally effective . . . if . . . a severance is effected pursuant to bankruptcy of a joint tenant.").

[6]This disposes of the Peets' corollary argument that the filing of their petition for relief destroyed the unity of title and the unity of time, two of the elements of a joint tenancy under Missouri law. *See In re Estate of Gerling*, 303 S.W.2d 915, 917 (Mo. 1957) (identifying elements). That argument presumes the Peets' interest in the real property and Marilynn Peet's interest in the pickup were conveyed to the bankruptcy estate.

without attribution much of the foregoing passage from *Spain*).  *See also Spears v. Boyd* (*In re Spears*), 313 B.R. 212, 217-18 (W.D. Mich. 2004) (reaching the same conclusion with respect to tenancies by the entireties).

The absence of any language of conveyance in the bankruptcy code is in marked contrast to the Bankruptcy Act of 1898, which originally provided, in pertinent part:

> The trustee of the estate of a bankrupt, upon his appointment and qualification, . . . *shall . . . be vested by operation of law with the title of the bankrupt*, as of the date he was adjudged a bankrupt, except in so far as it is to property which is held to be exempt[.]

*Bankruptcy Act of 1898*, 30 Stat. 544, 565 at § 70(a).  This language remained virtually unchanged for 80 years. *See* 11 U.S.C. § 110(a) (1976) (repealed 1978).  By eliminating this provision in 1978, Congress sounded the death knell for the Peets' argument.

> Congress eliminated the provisions of the old Bankruptcy Act which vested "title" in the Chapter 7 trustee by operation of law.  Thus, the concept of "title" in the Chapter 7 trustee as a basis for determining what property the trustee will administer in a Chapter 7 proceeding ended with the enactment of the Bankruptcy Reform Act of 1978.

*Benner*, 253 B.R. at 721-22.

In reaching the conclusion that the filing of a petition for relief does not sever a joint tenancy, we are mindful of the several cases cited by the Peets that say otherwise.  However, we are not persuaded by those cases.

In the oldest of those cases, for example, the court expressly acknowledged the bankruptcy code "does not provide that the Trustee holds *title* to the estate property." *In re Lambert*, 34 B.R. 41, 43 (Bankr. D. Colo. 1983). In light of Congress's elimination of § 110(a), that should have been the end of the court's inquiry: "If the intent of Congress is clear from the text of the statute, no further inquiry is necessary. The legislative history is consulted only if that intent cannot be discerned from the plain language." *Geiger v. Kawaauhau* (*In re Geiger*), 113 F.3d 848, 856 (8th Cir. 1997) (citations omitted). The court nevertheless looked to legislative history[7] and the language of 11 U.S.C. §§ 363(h)[8] and 522(b)(2)(B)[9] and concluded the filing of a petition for relief severs a joint tenancy.

---

[7]"'The debtor's interest in property also includes "title" to property, which is an interest, just as are a possessory interest, or leasehold interest, for example.' Senate Report No. 95–989, 95th Cong.2d Sess. 82–3 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868. And further, in that same report, it is stated: 'Once the estate is created, no interests in property of the estate remain in the debtor. Consequently, if the debtor dies during the case, only property exempted from property of the estate . . . will be available to the representative of the debtor's probate estate. The bankruptcy proceeding will continue *in rem* with respect to property of the estate, and the discharge will apply *in personam* to relieve the debtor, and thus his probate representative, of liability for dischargeable debts.'" *Lambert*, 34 B.R. at 43.

[8]When the *Lambert* decision was issued, § 363(h) provided, in pertinent part, "the trustee may sell both the estate's interest . . . and the interest of any co-owner in property in which the debtor had, immediately before the commencement of the case, an undivided interest as a . . . joint tenant[.]" It now reads, in pertinent part, "the trustee may sell both the estate's interest . . . and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a . . . joint tenant[.]"

[9]When the *Lambert* decision was issued, § 522(b)(2)(B) allowed a debtor to exempt from property of the estate "any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a . . . joint tenant[.]" That provision is now found at § 522(b)(3)(B).

With respect to the legislative history, to the extent it can be read to conflict with Congress's elimination of § 110(a) and its passage of § 541(a)–and we are not suggesting it can be–§ 541(a) controls.

> Legislative history can be a legitimate guide to a statutory purpose obscured by ambiguity, but in the absence of a clearly expressed legislative intention to the contrary, the language of the statute itself must ordinarily be regarded as conclusive. Unless exceptional circumstances dictate otherwise, when we find the terms of a statute unambiguous, judicial inquiry is complete. The mere fact that statutory provisions conflict with language in the legislative history is not an exceptional circumstance permitting a court to apply the legislative history rather than the statute.

*U.S. v. Erickson P'ship* (*In re Erickson P'ship*), 856 F.2d 1068, 1070 (8th Cir. 1988) (citations, quotation marks, and brackets omitted).

With respect to §§ 363(h) and 522(b)(2)(B), the court stated: "Both of these sections are written in the past tense 'had,' not the present tense 'has,' thus indicating that the debtor no longer holds the title that he did just prior to commencement of the case." *Lambert*, 34 B.R. at 43. However, this begs the question: If the debtor no longer holds the title, who does? The court offered no answer.

In another of the cases cited by the Peets, the court acknowledged the legislative history on which the court in *Lambert* relied "is not directly on point." *Feldman v. Panholzer* (*In re Panholzer*), 36 B.R. 647, 651 (Bankr. D. Md. 1984). The court instead relied on a "colloquy among Congressman M. Caldwell Butler, Professor Stefan A. Riesenfeld, and Bernard Shapiro, Esquire" to conclude "[a] comprehensive conveyance by the debtor to the Chapter 7 trustee takes place with the commencement of the proceeding and the creation of the bankruptcy estate under §

541(a)." *Id.* At the end of that portion of the colloquy quoted by the court, Professor Riesenfeld stated: "Bankruptcy affects and converts anything that is joint tenancy into a tenancy in common." *Id.* (quoting from Hearings before the Subcomm. on Civil and Constitutional Rights of the Comm. on the Judiciary, House of Rep., 94th Cong., 2d Sess., on H.R. 31 and H.R. 32, pt. 3, pp. 1519 *et seq*. (1976)). However, this colloquy took place in 1976, two years prior to Congress's elimination of § 110(a)–and any vesting of title in the trustee–and its passage of § 541(a).

The remaining cases cited by the Peets offer nothing new or different. In one, the court relied exclusively on *Lambert*. *In re Tyson*, 48 B.R. 412, 413-14 (Bankr. C.D. Ill. 1985). In another, the court relied on *Panholzer* and *Tyson*. *In re Chadwick*, 113 B.R. 540, 543 (Bankr. W.D. Mo. 1990).

In the last case cited by the Peets, one of our own, we stated: "With joint tenancy property, only the debtor's share of the property comes into the estate[.]" *Abernathy v. LaBarge* (*In re Abernathy*), 259 B.R. 330, 337 (B.A.P. 8th Cir. 2001). This is true, so far as it goes. However, that share is in a single undivided estate and includes the right of survivorship. *Remax of Blue Springs*, 708 S.W.2d at 806. In any event, the sole issue presented in *Abernathy* was the extent to which the debtor could claim an exemption in certain real property held in joint tenancy. *Id.* at 333. We were not asked to–and consequently did not–address the issue presented in this case.

CONCLUSION

Having reviewed the matter *de novo*, we agree with the bankruptcy court's conclusion that the filing of a petition for relief does not sever a joint tenancy. The Peets' undivided estate in the real property and Marilyn Peet's undivided estate in the pickup are property of the bankruptcy estate, and the trustee is entitled to the proceeds from the sales of the real property and the pickup, less any portion thereof the Peets

have exempted.  We therefore affirm the bankruptcy court's August 25, 2014 order authorizing the trustee to sell the real property and the pickup.

_____