The **PARK STATE BANK,**
Plaintiff-Appellee,

v.

Orville L. McLEAN, Defendant,

and

**Catherine A. Smith, Defendant-Appellant.**

**No. 81CA1065.**

Colorado Court of Appeals,
Div. III.

Oct. 14, 1982.
Rehearing Denied Nov. 18, 1982.

Geddes, Mac Dougall, Geddes & Paxton, P.C., David A. Paxton, Colorado Springs, for plaintiff-appellee.

Neville & Merrigan, P.C., John G. Neville, Boulder, for defendant-appellant.

SMITH, Judge.

Catherine A. Smith (formerly McLean) appeals an order of the court reviving a judgment against her deceased husband and a judgment lien against property now owned by her in Adams County. We reverse.

On August 13, 1975, a personal money judgment in favor of Park State Bank was entered by default in the district court of Teller County against Orville McLean (husband of Catherine). On August 27, 1975, the Bank caused a transcript of the judgment to be recorded by the Clerk and Recorder in the public records of Adams County.

Prior to 1975, Orville and Catherine McLean were the owners in joint tenancy of a parcel of real property in Adams County. On July 11, 1975, Orville quitclaimed his interest in this property to Catherine. However, in 1976 Park State Bank brought an action and obtained an order and judgment against both Orville and Catherine from the Adams County District Court setting aside, as fraudulent, that conveyance.

Orville died in 1978. As of that date no writ of execution had ever issued, nor had levy ever been made on the Adams County property.

Catherine was appointed personal representative and she published the statutory notice to creditors required by § 15–12–801, C.R.S.1973. The Bank did not file a claim in the estate proceeding based on its judgment.

Approximately two years after the estate was closed, the Bank filed a motion in the Teller County court to revive its judgment and its judgment lien against the Adams County property. After a hearing, the district court of Teller County ordered the judgment as well as the judgment lien on the property revived, thus authorizing the Bank to pursue its remedy through enforcement of its lien on the Adams County property.

On appeal, Catherine asserts that any lien on the Adams County property created by the recording of the Bank's judgment was extinguished upon McLean's death by operation of joint tenancy law. Our final determination depends upon the resolution of two issues raised by the bank in opposition to Catherine's assertion.

### I.

■ The Bank first contends that Catherine and Orville were not joint tenants at the time of Orville's death. We disagree.

It is the Bank's contention that, even though the attempted transfer by deed of McLean's interest in the Adams County property was set aside as an attempt to defraud creditors, it was valid as between Orville and Catherine. Thus, the Bank concludes that Catherine owned the entire fee, subject to the lien, at Orville's death.

However, the authority relied upon by the Bank for this contention, *Italian-American Bank v. Lepore,* 79 Colo. 466, 246 P. 792 (1926), is inapposite. *Italian-American* was a quiet title action brought by the grantor of a deed of trust who wished to cancel and set aside the trust deed. Lepore asserted that the purpose of his transfer had been to hinder and delay his creditor. Because it was the grantor himself who sought to set aside his own fraudulent transfer, the Supreme Court, applying equitable principles, declined to relieve Lepore from the effect of his wrongdoing and refused to set aside the trust deed.

In contrast to the facts of *Italian-American,* here, the Bank had brought the action to set aside the quitclaim deed from Orville to Catherine. Thus, it was the creditor, not the grantor, who sought to have the deed voided. The Bank was granted the relief it sought pursuant to § 38–10–117, C.R.S. 1973, which provides that:

> "Every conveyance . . . of any . . . interest in lands . . . made with the intent to hinder, delay, or defraud creditors . . . shall be void."

Because the attempted conveyance was void, Catherine did not acquire Orville's interest and they remained joint tenants. The Bank's rights and remedies were thus preserved precisely as they were prior to the attempted conveyance. The Bank cannot now reverse its position, and assert that the conveyance was valid.

### II.

■ In the alternative, the Bank argues that, even if Orville and Catherine were joint tenants at the time of Orville's death, the law in Colorado is that judgment liens survive the judgment debtor's death and remains attached to a deceased joint tenant's interests. We disagree.

We have found no Colorado cases which support the Bank's position. It is generally accepted by those states that have considered the problem, that the lien of a judgment debtor against a joint tenant attaches to the interest of only the joint tenant debtor, and that the lien terminates if the joint tenant debtor dies prior to attachment or levy having been made upon his interest. *Anderson v. Southern Pacific Co.,* 70 Cal. Rptr. 389, 264 Cal.App.2d 230 (1968); *Eastern Shore Building & Loan Corp. v. Bank of Somerset,* 253 A.2d 367, 253 Md. 525 (1969); *Zeigler v. Bonnell,* 52 Cal.App.2d 217, 126 P.2d 118 (1942); *see* 4A R. Powell, *The Law of Real Property,* § 618 (1979).

This rule derives from the theory that the "right of survivorship" interest of a joint tenant is an estate in land which vests on creation of the joint tenancy, making a joint tenancy interest with right of survivorship analogous to a life estate. *See Clovis v. Clovis,* 460 P.2d 878 (Okl.1969). Thus, the surviving joint tenant of real property does not take any new or additional interest by

virtue of the death of his joint tenant under the laws of descent and distribution, but rather under the original conveyance by which the joint tenancy was created, his interest in the property is merely freed from the participation of the other. *Eastman v. Mendrick,* 218 Kan. 78, 542 P.2d 347 (1975). It therefore follows that because the death of a joint tenant does not result in a transfer of that tenant's interest to the survivor, but merely terminates any interest the decedent may have had, any liens existing against the deceased joint tenant's interest are likewise extinguished, and the survivor becomes the sole owner of the entire property free from any liens which may have previously existed on the now extinguished interest of the joint tenant debtor.

The trial court, in deciding this case, determined that *Willis v. Neilson,* 32 Colo. App. 129, 507 P.2d 1106 (1973), which held that a specific judgment lien could follow a decedent's property interest even after his death, was dispositive here of the issue of the survival of the Bank's lien. *Willis* did not involve joint tenancy. Because the law of joint tenancy determines that decedent's interest was terminated, rather than transferred by his death, the trial court's reliance on *Willis* was misplaced.

### III.

■ Although the bank did not choose to execute on Orville's interest in the property during his lifetime and, although the lien was extinguished on Orville's death, the Bank was still not totally without an appropriate method for attempting to collect the debt represented by its judgment. The Bank could have presented its judgment as a claim in the estate in the proper manner. The assets of the estate, if any, would then have been chargeable with the debt of the judgment. The Bank, however, did not file its claim within the four months required by § 15–12–801, C.R.S.1973. Thus, the Bank is barred from asserting any claim based on the judgment. The rule effectively extinguishs it and *a fortiori* precluded its revival. Section 15–12–803(1), C.R.S.1973.

Since the Bank's lien was extinguished upon Orville's death by operation of the laws of joint tenancy, and since its judgment is now barred from presentation as a claim against Orville's estate, the trial court erred in reviving both.

Accordingly, the order is reversed and the cause is remanded to the trial court with directions to enter judgment consistent with this opinion.

KELLY and KIRSHBAUM, JJ., concur.