McHUGH, Circuit Judge.
Gregory and Andrea Chernushin owned a second home in Colorado in joint tenancy with right of survivorship. Eventually, Mr. Chernushin (but not Ms. Chernushin) filed for bankruptcy. During the bankruptcy proceedings, Mr. Chernushin died. The bankruptcy trustee, Robertson B. Cohen, then filed an adversary complaint against Ms. Chernushin, seeking to sell the home. Ms. Chernushin argued the bankruptcy estate no longer included any interest in the home because Mr. Chernushin's joint tenancy interest ended at his death. The bankruptcy court agreed with Ms. Chernushin, as did the district court on appeal. Mr. Cohen now appeals to this court.
Because the bankruptcy estate had no more interest in the home than Mr. Chernushin and Mr. Chernushin's interest extinguished when he died, we affirm.
I. INTRODUCTION
On August 17, 2015, Mr. Chernushin filed a voluntary Chapter 13 bankruptcy petition. Ms. Chernushin did not join his bankruptcy petition, nor did she file her own. Mr. Chernushin listed two real properties in his petition-a primary residence not at issue and a second home that is the subject of this appeal. Both homes were owned in joint tenancy with right of survivorship.
*1269 Mr. Chernushin claimed a bankruptcy exemption for the primary residence but not for the second home. A little over a month later, on September 30, 2015, Mr. Chernushin moved to convert his Chapter 13 reorganization proceeding to a Chapter 7 liquidation proceeding. The bankruptcy court converted the case and appointed Mr. Cohen as trustee.
On or about June 9, 2016, Mr. Chernushin committed suicide. One week later, Mr. Cohen initiated an adversary proceeding and filed a complaint against Ms. Chernushin in bankruptcy court seeking authorization to sell the second home. In response, Ms. Chernushin argued the second home was "no longer an asset of the Debtor's Estate since the Debtor's death in June 2016." App. at 159. The bankruptcy court agreed with Ms. Chernushin and granted summary judgment in her favor. Mr. Cohen appealed to the district court, and the court affirmed the bankruptcy court. Cohen v. Chernushin (In re Chernushin ), 584 B.R. 567 (D. Colo. 2018). Mr. Cohen then filed a timely appeal from the district court's decision.
II. DISCUSSION
A. Standard of Review
"Our review of the bankruptcy court's decision is governed by the same standards of review that govern the district court's review of the bankruptcy court." Conoco, Inc. v. Styler (In re Peterson Distrib., Inc. ), 82 F.3d 956, 959 (10th Cir.1996). "[W]e review the bankruptcy court's legal determinations de novo and its factual findings under the clearly erroneous standard." Id. Here, there are no disputed factual issues-we are reviewing only the bankruptcy court's legal determination. "Although we may look to the district court's intermediate appellate analysis to inform our review, we owe no deference to that court's decision." Search Mkt. Direct, Inc. v. Jubber (In re Paige ), 685 F.3d 1160, 1178 (10th Cir.2012). Before proceeding to our de novo review of the bankruptcy court's decision, we pause to provide an overview of the relevant legal principles.
B. Bankruptcy Estates
The commencement of a bankruptcy case "creates an estate." 11 U.S.C. § 541(a). " Section 541(a)(1) provides that the property of the estate includes 'all legal or equitable interests of the debtor in property as of the commencement of the bankruptcy case.' " Parks v. FIA Card Servs., N.A. (In re Marshall ), 550 F.3d 1251, 1255 (10th Cir.2008). In bankruptcy proceedings, "[p]roperty interests are created and defined by state law." Butner v. United States , 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ; In re Marshall , 550 F.3d at 1255 (quotation marks omitted). "Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." Butner , 440 U.S. at 55, 99 S.Ct. 914. "Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.' " Id. (quoting Lewis v. Mfrs. Nat'l Bank of Detroit , 364 U.S. 603, 609, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961) ). But "[o]nce that state law determination is made, ... we must still look to federal bankruptcy law to resolve the extent to which that interest is property of the estate." In re Marshall , 550 F.3d at 1255 (internal quotation marks omitted).
We have "emphasize[d] § 541(a)(1) limits estate property to the *1270 debtor's interests 'as of the commencement of the case.' " Sender v. Buchanan (In re Hedged-Invs. Assocs., Inc. ), 84 F.3d 1281, 1285 (10th Cir.1996). And "[t]his phrase places both temporal and qualitative limitations on the reach of the bankruptcy estate." Id. Temporally, "it establishes a clear-cut date after which property acquired by the debtor will normally not become property of the bankruptcy estate." Id. And qualitatively, "the phrase establishes the estate's rights as no stronger than they were when actually held by the debtor." Id. "Congress intended the trustee to stand in the shoes of the debtor and 'take no greater rights than the debtor himself had.' " Id. (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 368, reprinted in 1978 U.S.C.C.A.N. 5963, 6323); see id. at 1284 (the trustee "stands in the shoes of the debtor ... and takes no greater rights than the [debtor] had as of the bankruptcy filing").
It is uncontested that Mr. Chernushin and Ms. Chernushin owned the second home in joint tenancy with right of survivorship and the joint tenancy was not severed by Mr. Chernushin's bankruptcy petition nor at any time prior to his death.[1] And "since there is no federal law of property, it is necessary to look to state law to determine the nature, extent, and effect of the debtor's interest in a [joint tenancy with right of survivorship]." Zubrod v. Duncan (In re Duncan ), 329 F.3d 1195, 1198 (10th Cir.2003) (quotation marks omitted).
Under Colorado law, "[u]pon the death of a joint tenant, the deceased joint tenant's interest is terminated. In the case of one surviving joint tenant, his or her interest in the property shall continue free of the deceased joint tenant's interest." Colo. Rev. Stat. § 38-31-101(6)(c). Each joint tenant possesses an undivided interest in the whole property. Mangus v. Miller , 35 Colo.App. 115, 532 P.2d 368, 369 (1974), and any "[s]everance must occur prior to the death of one of the joint tenants, since the right of survivorship instantly vests title to the whole property in the surviving tenant at the moment of death of the other joint tenant," Place v. Carmack , 33 Colo.App. 411, 522 P.2d 592, 593 (1974), rev'd on other grounds , 188 Colo. 303, 535 P.2d 197 (1975).
This would seemingly resolve the appeal. Under Colorado law, Mr. Chernushin's interest in the joint tenancy "terminated," Colo. Rev. Stat. § 38-31-101(6)(c), and "the right of survivorship instantly vest[ed] title to the whole property in [Ms. Chernushin,] the surviving tenant[,] at the moment of death," Place , 522 P.2d at 593. And because the trustee "take[s] no greater rights than the debtor himself had," In re Hedged-Invs. Assocs., Inc. , 84 F.3d at 1285 (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 368), the trustee's, and the estate's, rights in the property terminated at Mr. Chernushin's death. As a result, Ms. Chernushin owns the entire property and it is no longer part of the bankruptcy estate.
Mr. Cohen has not cited any case where a court has determined that a joint tenancy survived the bankruptcy petition and yet failed to vest full title to the surviving tenant upon the death of a debtor joint *1271 tenant.[2] Instead, he presents several arguments, based on the Supremacy Clause, why federal law requires a different result: (1) Federal Rule of Bankruptcy Procedure 1016 provides that the death of the debtor does not impact the bankruptcy estate; (2) the Chapter 7 trustee has plenary authority over the bankruptcy estate subject to bankruptcy court approval; and (3) the Chapter 7 trustee has greater rights than the debtor under the strong arm clause, § 544(a). We address each argument in turn.
C. Federal Rule of Bankruptcy Procedure 1016
Federal Rule of Bankruptcy Procedure 1016[3] provides: "Death or incompetency of the debtor shall not abate a liquidation case under chapter 7 of the Code. In such event the estate shall be administered and the case concluded in the same manner, so far as possible, as though the death or incompetency had not occurred."
Nothing in the plain text of the rule states that the bankruptcy estate can never change upon the death of the debtor. Instead, the rule directs that the bankruptcy proceedings shall continue and the estate "shall be administered and the case concluded in the same manner, so far as possible ," as though death had not transpired. This is a procedural rule . It says nothing about the substance of the bankruptcy estate. Consistent with this rule, the bankruptcy proceedings here should continue as though Mr. Chernushin had not died.
Mr. Cohen argues otherwise and urges a reading of this rule that would prevent the bankruptcy estate from changing upon the death of the debtor. In support, he cites Redfield v. Ansbro (In re Goldberg ), 98 B.R. 353 (Bankr. N.D. Ill. 1989). We are not persuaded. In re Goldberg involved a *1272 contested proceeding between the executor of the deceased debtor's probate estate and the trustee of the debtor's bankruptcy estate. Id. at 354. There, the court first noted, referring to the debtor's pension fund, that the debtor's "death did not change the Debtor's entitlement to the funds," and under Bankruptcy Rule 1016, the debtor's death did not affect the status of bankruptcy estate. Id. at 358. The court next considered the legislative history of § 541 as it relates to property properly considered part of the probate estate of a deceased debtor. See id. ("Consequently, if the debtor dies during the case, only property exempted from property of the estate or acquired by the debtor after the commencement of the case and not included as property of the estate will be available to the representative of the debtor's probate estate ." (emphasis added) (quoting S. Rep. No. 95-989, 95th Cong., 2d Sess. 83, reprinted in 1978 U.S.C.C.A.N. 5787, 5869) ). The facts of In re Goldberg are readily distinguishable from those present here: Mr. Chernushin's death did change his entitlement to the second home-at death his interest extinguished and he had no entitlement to it . And unlike property that must pass through probate, as a joint tenancy, title to the property here was "instantly vest[ed]" in Ms. Chernushin upon Mr. Chernushin's death. Place , 522 P.2d at 593.
Federal Rule of Bankruptcy Procedure 1016 does not prevent Mr. Chernushin's joint tenancy in the home from terminating at his death to the detriment of the bankruptcy estate.
D. Chapter 7 Trustee Plenary Authority
Mr. Cohen next argues that allowing Mr. Chernushin's interest in the second home to terminate at his death would vitiate Mr. Cohen's plenary power over the bankruptcy estate's assets as the trustee. Under the bankruptcy code, the trustee may, "after notice and a hearing," sell property of the estate. 11 U.S.C. § 363(b)(1). That power includes selling "both the estate's interest ... and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a ... joint-tenant." Id. § 363(h). And because Federal Rule of Bankruptcy Procedure 6007 requires that the trustee "give notice of a proposed ... disposition of property," and requires "a hearing" if a party objects to the disposition, Mr. Cohen contends that Colorado's joint tenancy regime might violate the due process rights of creditors.
In addition, Mr. Cohen argues that "property of the estate is not affected by inaction." Appellant's Br. at 19. Under the bankruptcy code, "property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate." 11 U.S.C. § 554(d). And the trustee has the power to "avoid a transfer of property of the estate." Id. § 549(a). Mr. Cohen asserts that allowing property to be removed from the bankruptcy estate by the death of a debtor is inconsistent with the trustee's significant authority over the bankruptcy estate and "would create considerable disorder" and "essentially usurp the rights of [the debtor's] creditors." Appellant's Br. at 19.
But nothing about Colorado's joint tenancy law interferes with Mr. Cohen's obligations or authority as the trustee. Instead, Mr. Cohen's argument is based on a misunderstanding about the property in Mr. Chernushin's bankruptcy estate. As noted above, the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the bankruptcy case." 11 U.S.C. § 541(a). Mr. Cohen mistakenly *1273 concludes that the second home "was property of the bankruptcy estate." Appellant's Br. at 7. As discussed, however, § 541(a)(1) limits the property in the estate not only temporally, but also qualitatively . See In re Hedged-Invs. Assocs., Inc. , 84 F.3d at 1285. And that qualitative limitation here establishes, as correctly noted by Ms. Chernushin, that only a joint tenancy interest in the second home was ever part of the estate. The "estate's rights [are] no stronger than they were when actually held by the debtor," id. , and the trustee "take[s] no greater rights than the debtor himself had," id. (quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 368). Thus, the bankruptcy estate contained the same interest held by Mr. Chernushin-a joint tenancy subject to extinguishment in favor of the surviving joint tenant upon Mr. Chernushin's death.
Contrary to Mr. Cohen's assertions, Colorado's joint tenancy law did not interfere with federal law or with his ability to manage the bankruptcy estate. Upon Mr. Chernushin's death, there was no transfer of property that he could avoid. The joint tenancy held by the estate extinguished automatically. And while § 363(h) allows Mr. Cohen to sell "both the estate's interest ... and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a ... joint-tenant," he had to do so while the estate still had an interest in the property. By the time the trustee attempted to sell the second home, the estate no longer had any interest in it. Consequently, § 363(h) confers no power on Mr. Cohen to sell the second home.
E. Strong Arm Clause
Mr. Cohen finally contends the strong arm clause, 11 U.S.C. § 544, prohibits recognition of the effects of Mr. Chernushin's death on the estate property. Again, we disagree. The strong arm provision is inapplicable in this situation, as Mr. Cohen perhaps unwittingly concedes when he acknowledges that the strong arm clause "gives a bankruptcy Trustee special powers to defeat the status of certain creditors ." Appellant's Br. at 20 (emphasis added). Ms. Chernushin is not a creditor, nor is there any question about the status of any creditors related to the second home. She was a joint tenant and is now the sole owner of the second home.
Under the strong arm provision:
(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by-
(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement *1274 of the case, whether or not such a purchaser exists.
11 U.S.C. § 544. By its terms, the strong arm provision allows the trustee of the bankruptcy estate to "avoid any transfer ... or any obligation" that is voidable by judicial lien holders and bona fide purchasers. Id. To reiterate, no transfer occurred here. Ms. Chernushin held and continues to hold an interest in the entire property. That interest is simply no longer subject to Mr. Chernushin's joint tenancy because his interest extinguished upon his death. There are likewise no obligations subject to avoidance. Thus, § 544 is inapplicable.
Mr. Cohen, however, latches onto language in a previous decision of this court interpreting the strong arm clause: we noted that "[a] bankruptcy trustee, who acts in the interests of the debtor's general creditors, may acquire for the bankruptcy estate a greater right to a debtor's real property than the debtor himself had ." Hamilton v. Wash. Mut. Bank FA (In re Colon ), 563 F.3d 1171, 1172-73 (10th Cir.2009) (emphasis added); see Appellant's Br. at 10 (quoting In re Colon ); Appellant's Reply Br. at 9-10 (same). But a closer reading of In re Colon provides important context for this quote: "In particular, if there is a lien on a piece of property, the bankruptcy estate may take the property free of the lien (that is, avoid the lien) if the lien would not bind a hypothetical bona fide purchaser (BFP) of the property from the debtor." In re Colon , 563 F.3d at 1173 (emphasis added); see id. at 1173-74 ("Under 11 U.S.C. § 544(a) a bankruptcy trustee can avoid a mortgage if it could be avoided by a hypothetical lien creditor or by a hypothetical BFP of the property." (emphasis added) (footnote omitted) ). Not surprisingly, Mr. Cohen has cited no Colorado decision granting hypothetical lien creditors or bona fide purchasers the power to avoid the effects of joint tenancy. Cf. id. at 1174 (noting that under § 544, "[t]he status and rights of the hypothetical lien creditor and BFP are determined by state law."). Thus, nothing in the strong arm clause allows Mr. Cohen to avoid the automatic and immediate extinguishment of the bankruptcy estate's interest in the property upon Mr. Chernushin's death.
Mr. Cohen nevertheless contends that the estate prevails under § 544 either as the equivalent of a judicial lien holder or with the status of a bona fide purchaser for value. For the reasons we now explain, we disagree.
1. Hypothetical Lien Creditor under §§ 544(a)(1), (2)
Mr. Cohen argues that his status "[a]s a hypothetical lien creditor" "empowers him to liquidate, or 'redeem' the Debtor's undivided interest in jointly held property." Appellant's Br. at 22. He stresses that "he retains the right to sell the [second home] under § 363(h) and distribute the proceeds accordingly, even after the Debtor's death." Id.
Mr. Cohen is incorrect. Under Colorado law, "the lien of a judgment debtor against a joint tenant attaches to the interest of only the joint tenant debtor, and ... the lien terminates if the joint tenant debtor dies prior to the attachment or levy having been made upon his interest." Park State Bank v. McLean , 660 P.2d 13, 15 (Colo. App. 1982).
It therefore follows that because the death of a joint tenant does not result in a transfer of that tenant's interest to the survivor, but merely terminates any interest the decedent may have had, any liens existing against the deceased joint tenant's interest are likewise extinguished, and the survivor becomes the sole owner of the entire property free from any liens which may have previously *1275 existed on the now extinguished interest of the joint tenant debtor.
Id. at 16 ; see also Webster v. Mauz , 702 P.2d 297, 298 (Colo. App. 1985) ("Upon the death of a joint tenant, the surviving tenant becomes sole owner of the property free from any liens which may have existed on the extinguished interest of the deceased.... Thus, unless the joint tenancy was severed prior to [the debtor]'s death, plaintiff became the sole owner of the property, free of any liens which may have existed on [the debtor]'s interest.").
Even as a "hypothetical lien creditor," Mr. Cohen's interest in the property and right to sell the property ended with Mr. Chernushin's death. And, under Mr. Cohen's status as a hypothetical lien creditor, he would be able to defeat only prior transfers, conveyances, or encumbrances placed on the property, none of which has occurred here.
2. Bona Fide Purchaser
Mr. Cohen argues that because § 544(a)(3) treats him as a bona fide purchaser, he has "all of the rights and powers that a bona fide purchaser would have under state law, including the right and power to avoid a prior conveyance." Appellant's Br. at 24. Again, he fails to identify any prior conveyance he could avoid. To recap, there has been no conveyance of the second home because at Mr. Chernushin's death, his interest terminated and title vested instantly in Ms. Chernushin.
Mr. Cohen next asserts that either he, as the trustee, or the bankruptcy estate itself, became a joint tenant with Ms. Chernushin upon Mr. Chernushin's bankruptcy petition. According to Mr. Cohen, upon Mr. Chernushin's death the joint tenancy continued between the estate and Ms. Chernushin. He cites no law in support of this proposition and we have found none. Nor do we see anything in § 544(a)(3) or in Colorado law that authorizes a "transfer" of joint tenancy to another party as the protection afforded bona fide purchasers.
Under Colorado law, "[r]ecording acts have been adopted for purposes including the protection of subsequent purchasers of real property against the risk of prior secret and unknown instruments affecting title to [a property]." City of Lakewood v. Mavromatis , 817 P.2d 90, 94 (Colo. 1991). "Very generally, they permit a purchaser to rely on the condition of title as it appears of record." Id. (quoting Page v. Fees-Krey, Inc. , 617 P.2d 1188, 1193 (Colo. 1980) ). Thus, under Colorado law, bona fide purchasers of real estate are protected from prior unrecorded conveyances or encumbrances of which they had no actual knowledge or notice . Id. As a hypothetical bona fide purchaser, Mr. Cohen would be protected against any unrecorded conveyances on the second home even if Mr. Chernushin himself were not protected against those conveyances (and hence would have, as we have previously described, "a greater right to a debtor's real property than the debtor himself had"). But here, there are no unrecorded conveyances against which a bona fide purchaser would be protected. Thus, Mr. Cohen's status as a hypothetical bona fide purchaser for value does not grant him any greater rights in this particular property.
In summary, Mr. Cohen and the bankruptcy estate have no interest in the second home that extends beyond Mr. Chernushin's death.
III. CONCLUSION
Colorado's joint tenancy law does not conflict with federal bankruptcy law. Because Mr. Chernushin and Ms. Chernushin owned the second home in joint tenancy *1276 with right of survivorship at the time of the bankruptcy filing and joint tenancy was not severed prior to Mr. Chernushin's death, the bankruptcy estate's interest in the second home terminated at Mr. Chernushin's death. No interest in the second home remains in the bankruptcy estate. We AFFIRM the district court's decision upholding the bankruptcy court's judgment.

Prior cases in the District of Colorado held that a bankruptcy petition filed by one joint tenant severed joint tenancy. See Hahn-Martinez v. Slifco (In re Slifco ), No. 06-cv-01781-EWN, 2007 WL 1732782 (D. Colo. June 14, 2007) ; In re Lambert , 34 B.R. 41 (Bankr. D. Colo. 1983). After In re Slifco , the Colorado General Assembly amended the joint tenancy statute to expressly provide "[f]iling a petition in bankruptcy by a joint tenant shall not sever a joint tenancy." Colo. Rev. Stat. § 38-31-101(5)(b).

It appears every court that has considered a case involving a joint tenancy where either a debtor joint tenant or non-debtor joint tenant died has assumed, without explanation, that the joint tenancy operates exactly as it would in the absence of the bankruptcy. See, e.g. , In re Peet , No. 11-62549, 2014 WL 11321405, at *3 (Bankr. W.D. Mo. Aug. 25, 2014) (finding a lack of severance of joint tenancy and thus, after the death of the non-debtor joint tenants, "the [bankruptcy] estate now holds the entire interest" in the property), aff'd sub nom. Peet v. Checkett (In re Peet ), 529 B.R. 718 (B.A.P. 8th Cir. 2015), aff'd , 819 F.3d 1067 (8th Cir.2016) ; In re Benner , 253 B.R. 719, 723 (Bankr. W.D. Va. 2000) (finding a lack of severance of joint tenancy so, at the non-debtor joint tenant's death, "the trustee had no one else to share the property with and, therefore, he takes it all"); Durnal v. Borg-Warner Acceptance Corp. (In re DeMarco ), 114 B.R. 121, 126-27 (Bankr. N.D.W.Va. 1990) (finding a lack of severance of joint tenancy so, at the death of the debtor joint tenant, "there remains no interest or property right in the deceased" and the property was no longer in the bankruptcy estate).
At least two other courts have mentioned in dicta the same conclusion with respect to the effect of a joint tenancy or life estate death on a bankruptcy estate. See Daff v. Wallace (In re Cass ), No-12-1513-Kipata, 2013 WL 1459272, at *3 (B.A.P. 9th Cir. Apr. 11, 2013) (quoting, without comment, from a bankruptcy court order that "[u]pon the Debtor's death, the life estate terminated and no longer constituted property of bankruptcy estate which could be administered by the Trustee for the benefit of creditors"); Feldman v. Panholzer (In re Panholzer ), 36 B.R. 647, 651-52 (Bankr. D. Md. 1984) (after determining that filing for bankruptcy severed joint tenancy, opining that under joint tenancy, the bankruptcy estate would either be "depleted by the death of the debtor who is a joint tenant" or "enriched by the death of a joint tenant survived by the debtor").

The Supreme Court promulgated the Federal Rules of Bankruptcy Procedure pursuant to 28 U.S.C. § 2075. "As such, the Rules have the force of law." Brooks Fashion Stores, Inc. v. Mich. Emp't Sec. Comm'n (In re Brooks Fashion Stores, Inc. ), 124 B.R. 436, 440 (Bankr. S.D.N.Y. 1991).