23CA2130 Estate of Rice 12-26-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA2130
El Paso County District Court No. 22PR31869
Honorable Vincent N. Rahaman, Magistrate

In the Matter of the Estate of Johnny B. Rice, deceased.

Harvey Sender, Bankruptcy Trustee,

Intervenor-Appellant,

v.

Annette Kunovic,

Appellee.

ORDER REVERSED AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE MOULTRIE
Welling and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 26, 2024

Goff & Goff LLC, Lance J. Goff, Niwot, Colorado, for Intervenor-Appellant

Hoffman Law Firm, P.C., Elyse Ritchie, Fort Collins, Colorado, for Appellee

¶ 1 In this probate case, Harvey Sender, Chapter 7 Trustee for Michael Oboley's bankruptcy estate (Trustee), appeals a magistrate order determining that a residence owned by decedent Johnny B. Rice (Rice) remained part of Rice's probate estate because a deed purporting to convey the residence to Oboley was invalid. The order was issued after an evidentiary hearing that the Trustee did not have notice of and before the court joined the Trustee as an indispensable party to the proceedings pursuant to C.R.C.P. 19(a)(2)(A). Because we conclude that the Trustee was an indispensable party who was required to be notified of the proceedings and who had to consent to the probate magistrate's jurisdiction before the magistrate could determine the validity of the deed, we reverse the order, and we remand the case to the district court with directions.

## I. Background

¶ 2 Rice was Oboley's stepfather and was married to Oboley's mother for several decades. Rice was also the father of four children from a prior marriage. Rice died in November 2022, and his daughter, Annette Kunovic, filed a petition for formal probate of Rice's will one month later. In the petition, Kunovic identified

1

herself and her biological siblings as Rice's only heirs or devisees; Oboley was not named as a potential heir or devisee.

¶ 3    The case was assigned to a magistrate.  In December 2022, the court issued a "notice of assignment," which stated that "all parties must consent to any decisions made in this matter being performed by a magistrate."  The notice further stated as follows:

> Any objection to proceeding before the magistrate must be made in open Court within 14 days or in writing, filed with the Court, and served upon the other interested parties within 14 days.  *See* CRM 3(f)(1)(A)(i), (ii).  If an interested party does not object in accordance with Rule 3 or Rule 5 of the Colorado Rules for Magistrates, or if a party fails to appear for a hearing after being provided this notice, the party will have consented to the magistrate. CRM 3(f)(1)(A).

¶ 4    The court appointed Kunovic as the probate estate's personal representative in February 2023, and she published notice of the proceedings shortly thereafter.  The notice urged anyone with claims in the estate to present themselves to her or the court "on or before June 25, 2023, or the claims may be forever barred."

¶ 5    In May 2023, Oboley, through counsel, entered the case as a nonparty and filed a motion asking the court to "remove" from its consideration of the probate estate a residence located on Amberly

Drive in Colorado Springs (the Amberly Residence). Oboley claimed that Rice had executed a quitclaim deed in 2014 (the deed) transferring an interest in the Amberly Residence to him, and that the Amberly Residence therefore should not be included as an asset of Rice's estate. Oboley filed a copy of the deed with his motion and requested a hearing on its validity.

¶ 6    The magistrate held an evidentiary hearing in October 2023 to determine the validity of the deed. Oboley testified that his mother, Chae[1], and Rice executed the deed because — despite Rice's long-term marriage to Chae — Oboley wasn't included as a beneficiary in Rice's will. Oboley said that because Rice's biological children would receive all of Rice's other assets under the terms of Rice's will, the deed was executed to provide Oboley with an asset after Rice's death.

¶ 7    Oboley's counsel offered and the court admitted a copy of the deed into evidence. Kunovic asserted that the deed was invalid because it was missing Rice's and Chae's signatures. Oboley testified that the signature page existed, but said that he had

---

[1] To avoid confusion between those who share a last name, we refer to Chae Rice as Chae. We mean no disrespect in doing so.

misplaced it and was trying to find it among boxes of papers he "need[ed] to go through." During the hearing, Oboley also acknowledged that he had filed for bankruptcy in March 2021, but conceded that he hadn't identified the Amberly Residence as a property in which he claimed an interest in the bankruptcy proceeding.

¶ 8     The magistrate recessed before making an oral ruling. The magistrate ruled that the Amberly Residence should remain in Rice's estate because the deed was not a valid conveyance without a signature page. Immediately after the court issued its ruling, Oboley's counsel informed the magistrate that Oboley's daughter had found a copy of the signature page "in a box of tons of document" during the recess. Oboley's counsel then requested that the court "stay" its ruling until he could produce the signature page. The magistrate noted that the signature page was not in evidence, and that it "would have been helpful . . . to have had the signature page but it is what it is . . . and that's the court's ruling."

¶ 9     After the magistrate issued his oral ruling, but before the ruling was reduced to writing, the Trustee moved to be joined as an interested party under C.R.C.P. 19(a) in order to "protect the

4

bankruptcy estate's interest in upholding the validity of the 2014 [d]eed" by pursuing an appeal. The bankruptcy proceeding had closed in October 2021. But the Trustee asked the bankruptcy court to reopen that proceeding and reappoint him as trustee after he received a letter — three days after the magistrate held the evidentiary hearing on the validity of the deed — from Kunovic's brother stating that Oboley was asserting an ownership interest in the Amberly Residence.

¶ 10     The magistrate reduced his oral ruling to writing, in an order that concluded Oboley didn't "meet the statutory requirements for a deed as outlined in C.R.S. § 38-30-113 and C.R.S. § 38-10-106," C.R.S. 2024. Nearly a month later, the magistrate granted the Trustee's motion to intervene, finding that the Trustee met the standard for joinder under C.R.C.P. 19(a)(2)(A).

¶ 11     On appeal, the Trustee argues that (1) because he was an indispensable party under C.R.C.P. 19(a) and the "real party in interest" with respect to the deed, the magistrate lacked jurisdiction to consider the validity of the deed without first receiving his consent, which it did not have; and (2) even if the magistrate's exercise of jurisdiction over that issue was proper, the magistrate

erred by denying Oboley's motion to stay its ruling. Because we agree with the Trustee's first contention, which we conclude is dispositive, we decline to address his second.

## II. Applicable Legal Principles and Standard of Review

### A. Applicable Legal Principles

¶ 12 This case requires us to consider the intersection of portions of the magistrate rules, Colorado's probate code, federal bankruptcy law, and C.R.C.P. 19(a). We set forth the applicable legal principles below.

### 1. Magistrate Authority, Consent, and Notice to "Interested" Persons in Probate Cases

¶ 13 The powers of district court magistrates are limited by the Colorado Rules for Magistrates and applicable statutory provisions. *In re Marriage of James*, 2023 COA 51, ¶ 16. When acting in probate matters, magistrates are also governed by the Colorado Rules of Probate Procedure (C.R.P.P.). *In re Estate of Jordan*, 899 P.2d 350, 351 (Colo. App. 1995).

¶ 14 In probate cases, magistrates can perform without the parties' consent "any or all of the duties" that the court can delegate to a probate registrar or clerk. C.R.M. 6(e)(1). Under C.R.P.P. 4(a), this

6

primarily consists of certain ministerial functions. *In re Estate of Hillebrandt*, 979 P.2d 36, 38 (Colo. App. 1999) (Magistrates can perform functions that "are ministerial in nature, such as appointing fiduciaries, setting hearing dates, and certifying copies of documents filed in the court" without the consent of the parties.). Unless a magistrate presiding over a probate matter is exercising one of the functions listed in C.R.P.P. 4(a), the magistrate must have the consent of the parties to act, which must be obtained after proper notice to the parties. *See* C.R.M. 6(e)(2)(A), (f).

¶ 15    When consent is necessary, a party is deemed to have consented to a proceeding before a magistrate if the party has (1) affirmatively consented in writing or on the record, (2) been provided notice of the hearing and failed to file a written objection within fourteen days of that notice, or (3) failed to appear at a proceeding after having been provided notice of that proceeding. C.R.M. 3(f)(1)(A). A magistrate who doesn't have the authority to perform a particular function lacks the jurisdiction to act. *James*, ¶ 13.

¶ 16    When proceedings in a probate case require a notice of hearing, the petitioner is required to provide "any interested person"

with notice of the time and place of the hearing. § 15-10-401(1), C.R.S. 2024. The petitioner must mail or personally deliver the notice of hearing to interested persons at least fourteen days before the hearing. § 15-10-401(1)(a), (b).

¶ 17 An "interested person" for purposes of a probate proceeding includes any person who has a property right in or claim against the estate of a decedent that may be affected by the proceeding. § 15-10-201(27), C.R.S. 2024. Such persons can pursue claims in probate proceedings, but determining who qualifies as an interested person is a "highly context dependent," fact-specific inquiry. *In re Estate of Little*, 2018 COA 169, ¶ 38.

### 2. Bankruptcy Trustee Authority to Assert Property Claims

¶ 18 A person who declares bankruptcy must file a petition with the appropriate bankruptcy court. 11 U.S.C. § 301(a). Doing so creates a bankruptcy estate. 11 U.S.C. § 541(a). Subject to exceptions not applicable here, the estate contains "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

¶ 19 Whether something counts as a property interest is a question of state law. *See In re Dittmar*, 618 F.3d 1199, 1204 (10th Cir.

2010); *see also Peltz v. Shidler*, 952 P.2d 793, 795 (Colo. App. 1997) ("Whether an interest is property of a bankruptcy estate within the meaning of the bankruptcy code is a federal question to be decided by federal law, but in determining what interests in property the debtor has at the time of filing, the court must look to state law."). But the definition of estate property under section 541(a) should be construed broadly, *In re Marshall*, 550 F.3d 1251, 1255 (10th Cir. 2008), and even contingent, speculative, or future interests may be property of the estate, *Dittmar*, 618 F.3d at 1207.

¶ 20    When a bankruptcy trustee acts under the authority of 11 U.S.C. § 541, "the trustee stands in the shoes of the debtor" and has property rights equivalent to those that the debtor had when the bankruptcy estate was created. *See In re Chernushin*, 911 F.3d 1265, 1269-70 (10th Cir. 2018). And only the trustee has standing to assert claims that are the property of the bankruptcy estate. *Summers v. Perkins*, 81 P.3d 1141, 1142 (Colo. App. 2003); *Ogunwo v. Am. Nat'l Ins. Co.*, 936 P.2d 606, 609 (Colo. App. 1997) (when a debtor files a voluntary petition in bankruptcy and a trustee is appointed, the debtor's claims become the property of the

bankruptcy estate and only the trustee has standing to assert them).

### 3. Joinder of Persons Needed for Just Adjudication

¶ 21    Under C.R.C.P. 19(a), a person "whose presence is necessary to assure complete relief or to protect a legally cognizable interest at stake in an action must be joined as a party" to the action. *Cruz-Cesario v. Don Carlos Mexican Foods*, 122 P.3d 1078, 1080 (Colo. App. 2005).  Such parties are considered "indispensable" — and must be joined if feasible — because they have "such an interest in the controversy's subject matter that a final decree between the parties cannot be made without affecting the nonparty's interests or leaving the controversy in such a situation that its final determination may be inequitable to the nonparty." *Bittle v. CAM-Colorado, LLC*, 2012 COA 93, ¶ 14.  If an indispensable party has not been joined, the appropriate remedy is to join the necessary party rather than dismiss the action. *Cruz-Cesario*, 122 P.3d at 1081.

### B.    Standard of Review

¶ 22    Whether a person is an indispensable party who should be joined under C.R.C.P. 19(a) is subject to the district court's

10

discretion, and we won't disturb the court's determination absent an abuse of that discretion. *Wesley v. Newland*, 2021 COA 142, ¶ 11. A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law. *Id.*

¶ 23   We review de novo the interpretation of statutes and rules related to a magistrate's authority to act in a particular case. *See Andrews v. Miller*, 2019 COA 185, ¶¶ 6-8.

### III.   Discussion

¶ 24   With the above principles in mind, we turn to whether the Trustee was an indispensable party whose consent was required for the magistrate to consider the validity of the deed. The parties preserved this issue when the Trustee filed his motion to intervene, and Kunovic objected.

¶ 25   The Trustee asserts that the magistrate was required to obtain the consent of all interested parties before addressing the validity of the deed. And he asserts that as the bankruptcy trustee, he was an indispensable party because he (not Oboley) was the "real party in interest" whose consent was required to "vindicate" the bankruptcy estate's interest in the Amberly Residence based on the deed. In other words, the Trustee asserts that he was an indispensable party

11

because he was the only person with standing to assert the alleged interest in the Amberly Residence created by the deed. We agree.

## A. The Trustee Was an Indispensable Party Whose Consent Was Required for the Magistrate to Determine the Validity of the Deed

¶ 26 Magistrates are not expressly authorized to determine the validity of deeds by the magistrate rules, the probate rules, or the probate code. *See* C.R.M. 6(e); *see also* § 15-10-302, C.R.S. 2024 (regarding the general jurisdiction of the probate court). Likewise, neither section 38-10-106 nor section 38-30-113 — both of which were referenced in the magistrate's ruling — authorize a magistrate to determine the validity of a deed. Thus, Kunovic concedes — and we agree — that the magistrate's consideration of the validity of the deed required the consent of the parties.

¶ 27 But Kunovic argues that the Trustee was not an indispensable party because Oboley's claim to the Amberly Residence was disputed and the Trustee had "no evidence" that the Amberly Residence was conveyed to Oboley. And she asserts that the court could have found that the Trustee was indispensable but didn't. We disagree with both contentions.

¶ 28    The court determined that the Trustee was an indispensable party when it granted the Trustee's motion to intervene under C.R.C.P. 19(a).  Contrary to Kunovic's assertion that the court didn't "make a legal determination that [the] Trustee's involvement was required for it to determine the legitimacy of Oboley's alleged conveyance of the Amberly Residence," the court explicitly found that the Trustee was an indispensable party when it adopted the Trustee's proposed order — including the proposed finding that "the Trustee has met the standards for joinder as set forth in C.R.C.P. 19(a)(2)(A)" — without amendment.  And, as we explain next, the record supports this determination.

¶ 29    There was no dispute that Oboley declared bankruptcy in 2021.  Indeed, it was Kunovic who initially alerted the court to this fact in her response to Oboley's motion to remove the Amberly Residence from Rice's estate.  And because the deed existed when Oboley commenced his bankruptcy action in 2021, his alleged interest in the Amberly Residence under that deed was part of the bankruptcy estate when that estate was created.  *See Dittmar*, 618 F.3d at 1207.  Moreover, despite Oboley's failure to disclose his alleged interest in the Amberly Residence during the bankruptcy

proceedings, the interest remained part of the bankruptcy estate, even after the bankruptcy case closed. *See In re Marriage of Yates*, 148 P.3d 304, 314 (Colo. App. 2006) (standing to assert claims doesn't revert to the debtor, even after the closing of a bankruptcy case, unless the claim has been abandoned by the trustee); *see also Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) ("While properly scheduled estate property that has not been administered by the trustee normally returns to the debtor when the bankruptcy court closes the case, undisclosed assets automatically remain property of the estate after the case is closed.").

¶ 30   Because Oboley's alleged interest in the Amberly Residence remained part of the bankruptcy estate, the Trustee continued to "stand in" Oboley's shoes for purposes of adjudicating any claims related to the Amberly Residence. The Trustee's involvement was necessary for the court to ensure its determination of the deed's validity considered the bankruptcy estate's interest and afforded completed relief to the parties. *See* C.R.C.P. 19(a)(2)(A); *see also Bittle*, ¶ 15 ("[A]s a general matter, all parties who have an interest in property at issue in the litigation must be joined."). Accordingly,

the court reversibly erred by adjudicating the deed's validity in the absence of the Trustee.

### B. The Trustee Was Not Provided Notice and Did Not Consent

¶ 31    Kunovic admits that she didn't provide notice of the hearing to the Trustee. But she asserts that she had "no duty, nor any reason to notify the Trustee of the estate proceedings." Again, we disagree.

¶ 32    As the petitioner and the probate estate's personal representative, Kunovic was required to provide notice of any hearings to interested persons, including potential creditors. *See* § 15-10-401(1), § 15-12-801, C.R.S. 2024. As just discussed, the Trustee was an indispensable party entitled to notice of the evidentiary hearing concerning the validity of the deed. But Kunovic didn't provide notice to the Trustee despite being aware of Oboley's bankruptcy.

¶ 33    Kunovic acknowledges that a personal representative has a duty to notify potential creditors, but she nevertheless asserts that expecting a personal representative to investigate whether a claimant in a probate proceeding properly disclosed assets in a prior bankruptcy action would be unduly burdensome on personal representatives and trustees, and would "have the chilling effect of

requiring every single trustee to join the probate . . . to simply be sure that the claimant properly listed all property." We reject this argument. The probate code only requires that a personal representative use "reasonable diligence" to ascertain the address or identity of interested persons to provide them with notice. *See* § 15-10-401(1)(c).

¶ 34 Kunovic knew of the identity of the Trustee as an interested person at least as early as June 2023, when she included information about Oboley's bankruptcy in her response to his motion to remove the Amberly Residence from Rice's estate. To the extent Kunovic didn't have specific contact information for the Trustee, she was required to exercise *reasonable* diligence to attempt to obtain the information so she could notify him of the pending evidentiary hearing.

¶ 35 Despite this obligation, it doesn't appear she attempted to obtain from the bankruptcy court contact information for the Trustee. Likewise, despite deposing Oboley and serving him with written discovery requests that asked him for information about his bankruptcy, Kunovic failed to ask Oboley whether he had the Trustee's contact information. Under these circumstances, we

conclude that Kunovic didn't exercise reasonable diligence to obtain the Trustee's contact information.

¶ 36 Kunovic also argues that the Trustee had actual notice — of the probate case generally and the October 2023 hearing specifically — because Oboley testified that he had contacted the Trustee. We reject this argument because it is underdeveloped and is not otherwise supported by factual findings in the record. *See In re Estate of Liebe*, 2023 COA 55, ¶ 19 (declining to address underdeveloped arguments).

¶ 37 Because the Trustee didn't have notice of the October 2023 hearing and wasn't joined as a party until after the hearing's conclusion, he wasn't present at the hearing to orally consent to the magistrate's consideration of the validity of the deed. *See* C.R.M. 3(f)(1)(A)(i). And, as a nonparty who wasn't noticed, we can't deem him to have consented to the magistrate's jurisdiction by failing to appear at the October 2023 hearing. *See* C.R.M. 3(f)(1)(A)(iii). Likewise, there is no evidence in the record to support a conclusion that the Trustee affirmatively consented to the magistrate's jurisdiction in writing or failed to object in writing to the October 2023 hearing. *See* C.R.M. 3(f)(1)(A)(ii), (iii).

¶ 38    Thus, the magistrate lacked jurisdiction to determine the validity of the deed without first joining the Trustee and obtaining the Trustee's consent. *See Andrews*, ¶ 15 (without the parties' consent, a magistrate lacks jurisdiction to perform functions other than those specifically authorized by C.R.M. 6).

¶ 39    Accordingly, we reverse the magistrate's order determining that the deed was invalid and remand this case to the district court. On remand, should the Trustee decide to litigate the substance of Oboley's motion (or a substantially similar motion), appropriate notice must be given to all interested parties, and their consent must be obtained before any proceedings are held before a magistrate. We take no position on whether an evidentiary hearing is necessary to resolve these issues or whether the deed was a valid conveyance of property.

## IV.    Disposition

¶ 40    The order is reversed, and the case is remanded for further proceedings consistent with this opinion.

JUDGE WELLING and JUDGE BROWN concur.